UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director of the United States Immigration and Customs Enforcement; ANTHONY SALISBURY, in his official capacity as Executive Associate Director of Homeland Security Investigations and the Principal Deputy Homeland Security Adviser to the White House; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; and THOMAS HOMAN, in his official capacity as Assistant to the President and Border Czar,

Defendants.

Case No. 3:26-cv-10680

**DECLARATION OF BEAU C. TREMITIERE IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED PRODUCTION OF THE ADMINISTRATIVE RECORD AND EXPEDITED DISCOVERY**

I, Beau C. Tremitiere, declare and state the following:

1. I am over the age of 18. I am a member of the Bar of this Court; a Counsel with Protect Democracy; and an attorney for Plaintiffs California Nurses Association, National Nurses United, and Voto Latino Foundation, in the action *California Nurses Association v. Mullin*, No. 26-cv-1350 (N.D. Cal.), filed in this District on September 18, 2026. I make this declaration in support of Plaintiffs' Motion for Expedited Production of the Administrative Record and Expedited Discovery (the "Expedited Production Motion"). I state the matters herein of my personal knowledge. If called on to do so, I could and would testify to them.

2. The Expedited Production Motion requests an order granting expedited production of the administrative record, as relevant to adjudication of Plaintiffs' claims under the Administrative Procedure Act, and expedited production of discovery in the form of responses to Plaintiffs' proposed Requests for Production and Interrogatories.

3. Plaintiffs' proposed Requests for Production are attached hereto as **Exhibit 1**;

4. Plaintiffs' proposed Interrogatories are attached hereto as **Exhibit 2**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated September 21, 2026

Respectfully submitted,

By: <u>*/s/ Beau Tremitiere*</u>
BEAU C. TREMITIERE
Counsel

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director of the United States Immigration and Customs Enforcement; ANTHONY SALISBURY, in his official capacity as Executive Associate Director of Homeland Security Investigations and the Principal Deputy Homeland Security Adviser to the White House; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; and THOMAS HOMAN, in his official capacity as Assistant to the President and Border Czar,

Defendants.

Case No. 3:26-cv-10680

**[PROPOSED] REQUESTS FOR PRODUCTION**

**[PROPOSED] REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs California Nurses Association, National Nurses United, the City and County of San Francisco, the County of Santa Clara, and Voto Latino Foundation, through their counsel, hereby request that Defendants produce the documents described below by Tuesday, September 29, 2026, or no later than seven days before the Court schedules a hearing on Plaintiffs' Motion for APA Stay and Preliminary Injunction, whichever date is earlier. Documents produced must adhere to the Definitions and Instructions set forth below, the Federal Rules, and the Local Rules of the Northern District of California.

**DEFINITIONS**

1. "**Action**" refers to *California Nurses Association et al. v. Mullin et al.*, Civil Action No. 26-10680 (N.D. Cal.), Including any consolidated, related, or companion proceedings.

2. "**A-number**" means a seven-, eight- or nine-digit number that the U.S. Department of Homeland Security ("DHS") assigns to an individual in its U.S. Citizenship and Immigration Services ("USCIS") system.

3. "**Communication**" means the transmittal of information by any means, whether oral, written, or electronic, Including: policy statement, in-person conversation, telephone call, video call, radio transmission (Including via Zello or similar push-to-talk applications), email, text message, SMS, MMS, instant message, chat message (Including via WhatsApp, Signal, Telegram, iMessage, or any similar application), voice message, voicemail, memorandum, letter, report, briefing, slide deck, or any other method of conveying information between or among Persons. Oral communications are responsive to these Requests to the extent that a Document memorializing, summarizing, referring to, or reflecting the substance of the communication exists.

4. "**Complaint**" means the Complaint filed on September 18, 2026 (ECF No. 1) in this Action.

5. "**Concerning**," "**Relating to**," or "**Regarding**" means referring to, describing, evidencing, constituting, comprising, mentioning, reflecting, generated by, generated in connection with, arising out of, responsive to, or pertaining in any way to the subject of the Request. These terms shall be construed broadly.

6. "**Defendants**" means all named Defendants in this Action and, for the purpose of these discovery requests, includes their respective agencies, sub-agencies, offices, components, field offices, regional offices, task forces, and joint operations centers, and all current and former officers, employees, agents, detailees, contractors, task force officers, and any other Persons acting on their behalf or under their direction. "Defendants" includes Markwayne Mullin, in his official capacity as Secretary of Homeland Security; DHS; USCIS; Joseph B. Edlow, in his official capacity as Director of USCIS; U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella, in his official capacity as Senior Official Performing the Duties of the Director of ICE; Anthony Salisbury, in his official capacity as Executive Associate Director of Homeland Security Investigations ("HSI") and the Principal Deputy Homeland Security Adviser to the White House; U.S. Customs and Border Protection ("CBP"); Rodney S. Scott, in his official capacity as Commissioner of CBP; and Thomas Homan, in his official capacity as Assistant to the President and Border Czar.

7. "**Document**" has the broadest meaning permitted under Federal Rule of Civil Procedure 34(a) and shall be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in Rule 34(a)(1)(A). The term includes all writings, recordings, images, and electronically stored information of any kind, whether in paper, electronic, photographic, or any other form. Without limiting the generality of the

foregoing, the term includes: correspondence, memoranda, emails, text messages, SMS/MMS messages, instant messages, chat messages (Including via WhatsApp, Signal, Telegram, iMessage, Zello, or any similar application), social media messages or posts, radio transmissions (to the extent recorded or logged), voice messages, voicemail, notes, reports, forms, applications, logs, photographs, images, video recordings, audio recordings, files, database entries, database query results and outputs, spreadsheets, presentations, slide decks, calendars, task lists, metadata, audit trails, system-generated alerts, automated notifications, and any drafts, non-identical copies, attachments, or enclosures of or to the foregoing. A draft or non-identical copy is a separate document within the meaning of this term. It also specifically includes **Privacy Impact Assessments** and **Privacy Threshold Analyses** as further defined below.

8. “**Government Official**” means any current or former officer, employee, appointee, contractor, or agent of any Defendant or Defendant agency during the time period specified in the Instructions herein.

9. “**HSI-USCIS Coordination Memo**” means the August 2026 DHS memorandum directing HSI agents to coordinate with USCIS regarding DHS inquiries linking a purported non-U.S. citizen to alleged unlawful participation in elections. *See* Plaintiffs’ Motion for APA Stay and Preliminary Injunction, Declaration of Beau Tremitiere (“Tremitiere Decl.”), Ex. 20. It represents a policy document and implementation of the **“Unlawful Voter Initiative”** as defined below, and specifically Defendants’ Voter Eligibility Matching Policy, as further defined and described in Plaintiffs’ Complaint. *See, e.g.*, Compl. ¶¶ 5, 65, 113–189. The title of the document used here and in Plaintiffs’ filings is to provide a shorthand for description of the August 2026 memorandum and includes the same document by a different title known only to Defendants.

10. "**HSI Targets Memo**" means the June 2026 DHS letter memorandum ordering HSI to devote resources to arrest and deport alleged non-U.S. citizens DHS believes were improperly registered or had voted, as reported in a DHS press release dated June 9, 2026. *See* Tremitiere Decl., Ex. 27. It represents a policy document and implementation of the **"Unlawful Voter Initiative"** as defined below. The title of the document used here and in Plaintiffs' filings is to provide a shorthand for description of the June 2026 letter memorandum and includes the same document by a different title known only to Defendants.

11. "**Including**" means including but not limited to.

12. "**Person**" means any natural person or any legal entity, including, without limitation, any business, governmental entity, agency, component, or association.

13. "**Plaintiffs**" means the California Nurses Association, National Nurses United, the City and County of San Francisco, the County of Santa Clara, and Voto Latino Foundation.

14. "**Privacy Impact Assessments**" means, under DHS's own definition, anything included within the following information and processes: "The Chief Privacy Officer is responsible for establishing and overseeing the implementation of privacy policies and carrying out the functions of DHS regarding oversight, coordination, and facilitation of the Department's privacy compliance efforts as required in Title 6 U.S.C. §142 of the Homeland Security Act (HSA) and other privacy laws applicable to DHS. Pursuant to Section 208 of the E-Government Act, all federal agencies are required to conduct a Privacy Impact Assessment (PIA) before developing or procuring IT systems or projects that collect, maintain or disseminate information in identifiable form from or about members of the public. Information in identifiable form is defined as 'information in an IT system or online collection: (i) that directly identifies an individual (e.g., name, address, social security number

or other identifying number or code, telephone number, email address, etc.) or (ii) by which an agency intends to identify specific individuals in conjunction with other data elements.' An individual is defined as 'a citizen of the United States or an alien lawfully admitted for permanent residence.' The purpose of PIA is to provide transparency and demonstrate that privacy protections are incorporated throughout the life cycle of a system. PIAs are a decision tool used by DHS to identify and mitigate privacy risks that notifies the public which information in identifiable form is being collected. DHS conducts a PIA when developing or procuring any new technologies or systems that handle or collect information in identifiable form; creating a new program, system, technology, or information collection that may have privacy implications; updating a system that results in new privacy risk and issuing a new or updated rulemaking. PIAs should ensure conformance with applicable legal requirements for privacy, evaluate protections, and serve as an alternative process to mitigate potential privacy risks."[1]

15. "**Privacy Threshold Analysis**" means, under DHS's own definition, "internal DHS questionnaire used to identify if personally identifiable information (PII) is collected, maintained, used, or disseminated by a form, new project, pilot, program, rule, information collection, or system (collectively referred to as 'program/system'). PTAs are also the formal mechanism used by the DHS Privacy Office to determine if a program/system is privacy sensitive; and if additional privacy compliance documentation, such as a Privacy Act Statement, Privacy Impact Assessment (PIA) and/ or System of Records Notice (SORN), is required."[2]

---

[1] U.S. Dep't of Homeland Sec., *Privacy Impact Assessments*, DHS.gov, https://www.dhs.gov/privacy-impact-assessments (last updated Dec. 1, 2023).

[2] U.S. Dep't of Homeland Sec., *Privacy Threshold Analysis*, DHS.gov, https://www.dhs.gov/publication/privacy-threshold-analysis (last updated Apr. 11, 2025).

16. "**Reflecting**" means constituting, comprising, describing, depicting, evidencing, or illustrating.

17. "**Significant Event Notification**" means the system or program used by DHS or any component, agency, sub-agency, field office, regional office, task force, or joint operations center thereof, to report events or incidents that occur in connection with a field operation undertaken to implement the "**Unlawful Voter Initiative**," as defined below.

18. "**Surge Initiative Guidance**" means the guidance from DHS to the HSI unit of the ICE agency instructing HSI to engage in a "coordinated criminal voter fraud surge initiative to pursue investigative leads, conduct field interviews, and support timely prosecutorial review," as reported by CNN to take effect on September 1, 2026. Tremitiere Decl., Ex. 4. It represents a policy document and implementation of the **"Unlawful Voter Initiative"** as defined below, and specifically Defendants' Field Operations Policy, as further defined and described in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 5–8, 19, 65, 70–112.

19. "**TECS Records**" means the system or program referenced in a USCIS whistleblower disclosure dated September 8, 2026, to identify individuals for investigation relating to the Unlawful Voter Initiative. *See* Tremitiere Decl., Ex. 1 at 2–3, Ex. 2 at 1, 14, 17, 19–20, 24.

20. **"Unlawful Voter Initiative"** is the overarching DHS policy, reported in news articles, *e.g.*, Tremitiere Decl., Ex. 3, and as further explained and defined in Plaintiffs' Complaint, *see, e.g.*, Compl. ¶¶ 1, 5, 62–65, that includes both the data sourcing and matching component and the field operations component of Defendants' challenged voter intimidation scheme, *see, e.g.*, Compl. ¶¶ 74–206.

21. "**You**" or "**Your**" refers to all Defendants, as defined above.

**INSTRUCTIONS**

1. **Governing Rules**. In addition to the specific instructions below, these Requests incorporate the requirements of Federal Rules of Civil Procedure 26 and 34, the Local Rules of the Northern District of California, and any operative scheduling, ESI, or protective order entered or that may be entered in this Action. To the extent any Instruction conflicts with an applicable Federal Rule of Civil Procedure, the Federal Rule controls.

2. **Scope of Production**. Please identify and produce all requested documents in the possession, custody, or control of Defendants, or available to Defendants through reasonable effort, Including documents and information held by any current or former officer, employee, agent, detailee, contractor, task force officer, or other person directly or indirectly employed or retained by, or acting on behalf of, DHS, ICE, CBP, HSI, ICE Enforcement and Removal Operations ("ERO"), ICE Office of the Principal Legal Advisor, the Office of the Secretary of Homeland Security, the Office of Intelligence and Analysis ("I&A"), or any component, sub-agency, field office, regional office, task force, or joint operations center thereof. Defendants shall also identify and produce responsive documents in the possession of their past and present attorneys, investigators, consultants, or anyone else subject to Defendants' control who maintains records on Defendants' behalf, in Defendants' name, or otherwise under Defendants' control.

3. **Time Period**. Unless otherwise specified in a particular Request, the relevant period for these Requests covers the period from June 1, 2026, through the date of production.

4. **Organization of Production**. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E), documents must be produced either as they are kept in the usual course of business, in which case they must be produced in such fashion as to identify the agency, component, office, field office, or unit in whose possession the document was found, the custodian(s) of each document, and the server or central file in which it was found; or

otherwise organized and labeled to correspond to each Request enumerated herein, with the specific Request identified.

5. **Metadata and ESI**. Each document produced shall include all associated metadata intact. At a minimum, metadata production shall include: (a) custodian identity; (b) file source system or Database of origin; (c) date created; (d) date last modified; (e) author; (f) file name and file path; (g) any tags, labels, classification markings, or access-restriction designations applied by any person or automated system; and (h) for emails, all header information (Including To, From, CC, BCC, Date, and Subject fields) and all attachments. Spreadsheets, databases, and structured data shall be produced in native format. Defendants must provide any data dictionary or other materials necessary to use or interpret Defendants' data compilations, Including field names, data types, and other identifying nomenclature.

6. **Complete Documents**. Subject to a valid claim of privilege, if any portion of any document is responsive to any Request, a legible version of the entire document must be produced, together with all non-identical copies, versions, and drafts of that document, Including all attachments and enclosures. A draft or non-identical copy is a separate document for purposes of these Requests.

7. **Mobile Devices**. Responsive documents include data stored on any Mobile Device—whether government-issued or personally owned—that was used by any Unnamed Agent or other Defendant employee in connection with the events alleged in Plaintiffs' Complaint, Including data stored locally on the device, in any associated cloud account or backup, in any messaging application (Including encrypted messaging applications such as Signal, WhatsApp, or Telegram), or in any system that automatically receives data transmitted from the device, Including DHS systems that receive data from Mobile Device applications.

8. **Documents No Longer in Possession.** If any document responsive to a particular Request no longer exists or is no longer in Defendants' possession, custody, or control, state in writing: (a) a description of the document; (b) the date it was last in Defendants' possession; (c) the circumstances under which it was lost, destroyed, transferred, or otherwise disposed of; (d) the identity of any person who authorized or carried out the disposition; (e) the identity of any person or entity believed to be in current possession; (f) the Request(s) to which the document was responsive; and (g) the identity of any persons with knowledge of the document.

9. **Documents That Cannot Be Produced**. If Defendants are unable to produce a document that is responsive to a Request, describe the document, state why it cannot be produced, and, if applicable, state the document's whereabouts when last in Defendants' possession, custody, or control.

10. **No Responsive Documents**. If there are no documents or information responsive to all or any portion of any Request, so state in writing, specifying which Request or portion thereof yielded no responsive documents.

11. **Privilege**. Other than redactions of privileged information, documents are to be produced in full. If Defendants withhold production of any document or portion of any document responsive to these Requests based upon any privilege, protection, or immunity, produce it to the extent possible and provide a privilege log within 14 days of production identifying: (a) the nature of the document (e.g., memorandum, email); (b) its date; (c) its author and all recipients; (d) the subject matter in sufficient detail to assess the privilege claim without revealing privileged content; (e) the specific privilege asserted (e.g., attorney-client, work product, deliberative process, law enforcement, state secrets); and (f) the factual basis for the assertion, Including, for any claim of deliberative process privilege, the specific

decision to which the document relates, and for any claim of law enforcement privilege, a declaration from an appropriate agency official identifying the specific harm disclosure would cause. If You withhold or redact any Document, communication, or tangible thing responsive to these Requests on the basis of attorney-client privilege, the work-product doctrine, or any other privilege or immunity, You must provide a detailed, document-by-document privilege log in strict compliance with Federal Rule of Civil Procedure 26(b)(5)(A).

12. **Objections**. If Defendants object to all or any portion of any Request, Defendants must: (a) identify the objectionable Request or portion thereof; (b) state the nature and basis of the objection with specificity; and (c) notwithstanding the objection, produce all documents and information to which the objection does not apply. An objection to part of a Request does not justify withholding documents responsive to the remainder.

13. **Retention of Originals**. Defendants must retain all original documents responsive to these Requests for inspection or copying throughout the pendency of this Action, any appeal(s), and any related proceedings.

14. **Construction**. In construing these terms:

a. Terms not specifically defined shall be given their ordinary meaning.

b. The use of a verb in any tense shall be construed as the use of the verb in all other tenses as necessary to bring within the scope of any Request all responsive information.

c. The singular includes the plural and vice versa.

d. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to make any Request inclusive rather than exclusive.

e. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

f. "Including" means "including but not limited to."

15. **No Admissions**. None of the Definitions, Instructions, or Requests set forth herein shall be construed as an admission relating to the existence, relevance, or admissibility of any evidence, or to the truth or accuracy of any statement or characterization herein.

16. **Continuing Obligation**. These Requests are continuing in nature. If Defendants become aware of additional responsive documents or information, or information inconsistent with that previously produced, prompt supplementation pursuant to Federal Rule of Civil Procedure 26(e) is required. Plaintiffs specifically reserve the right to seek supplementary responses and additional production prior to the close of the Action.

17. **Agency Coordination**. To the extent responsive documents are held by multiple Defendant agencies or components, Defendants shall coordinate their search and production efforts to ensure completeness and shall not rely on inter-agency or inter-component referral processes that would delay production beyond the deadline specified herein. The fact that a responsive document may be held by a Defendant agency other than the one to which a particular Request is most directly addressed does not relieve any Defendant of its obligation to produce that document.

18. **Proportionality**. These Requests have been drafted consistent with the proportionality principles of Federal Rule of Civil Procedure 26(b)(1). Plaintiffs have intentionally limited the number of their First Requests for Production to only 10 Requests, expressly in the interest of proportionality and expedition. Plaintiffs reserve all rights to modify, supplement, or otherwise augment these Requests as the Action proceeds.

**REQUESTS FOR PRODUCTION**

1. The Surge Initiative Guidance and all documents reflecting the Surge Initiative Guidance, including any supplementing or superseding policy or implementation documents for the

guidance and specific local guidance provided to ICE field offices to implement the Surge Initiative Guidance.

2. The HSI-USCIS Coordination Memo and all documents reflecting the HSI-USCIS Coordination Memo, including any supplementing or superseding implementation or policy documents for the memorandum.

3. The HSI Targets Memo and all documents reflecting the HSI Targets Memo, including any supplementing or superseding implementation or policy documents for the memorandum.

4. All training materials relating to the Surge Initiative Guidance, the HSI-USCIS Coordination Memo, and the HSI Targets Memo, including the training video, PowerPoint presentation, and any other documents that DHS or any component, agency, sub-agency, field office, regional office, task force, or joint operations center thereof used as part of a training administered on August 21, 2026, as reported in a USCIS whistleblower disclosure dated September 8, 2026. *See* Tremitiere Decl., Ex. 2.

5. All documents and communications reflecting questions, concerns, or criticisms that any current or former DHS employee, appointee, contractor, or agent raised relating to the reliability of the data and the matching tasks used to implement or prepare to implement the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance, the HSI-USCIS Coordination Memo, or the HSI Targets Memo.

6. All documents or communications, including TECS records, relating to any field operations undertaken to implement the Unlawful Voter Initiative by DHS or any component, agency, sub-agency, field office, regional office, task force, or joint operations center thereof, concerning possible or actual interactions with individuals confirmed, suspected, or stated to be U.S. citizens, including those that produced a Significant Event Notification.

7. All documents and communications concerning operations or potential operations DHS reported via the social media posts cited in this request to have occurred in California during the week of August 10, 2026, *see* Tremitiere Decl., Ex. 14,[3] including all reports concerning interactions with individuals confirmed, suspected, or stated to be U.S. citizens.

8. All documents and communications concerning operations or potential operations DHS reported via the social media posts cited in this request to have occurred in California on or around September 11, 2026, Tremitiere Decl., Ex. 13, including all reports concerning interactions with individuals confirmed, suspected, or stated to be U.S. citizens.

9. All documents and communications concerning an operation reported by DHS on September 3, 2026, via the social media post cited in this request, explaining that "@HSIKansasCity is on the ground in St. Louis investigating suspected unlawful voting," including all reports concerning interactions with confirmed or suspected U.S. citizens. Tremitiere Decl. ¶ 23, Ex. 15.

10. All documents and communications in which government officials who received training in connection with the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance or the HSI-USCIS Coordination Memo, expressed concerns or raised questions about instructions to access state voter registration websites by attesting that they are the voter or are acting with the voter's express authorization, as reported in a USCIS whistleblower disclosure dated September 8, 2026. Tremitiere Decl., Ex. 2.

---

[3] *See* HSINorCal (@HSISanFrancisco), X (Sep. 2, 2026, 14:15 PM EST), https://x.com/HSISanFrancisco/status/2095214009767059518?s=20.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director of the United States Immigration and Customs Enforcement; ANTHONY SALISBURY, in his official capacity as Executive Associate Director of Homeland Security Investigations and the Principal Deputy Homeland Security Adviser to the White House; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; and THOMAS HOMAN, in his official capacity as Assistant to the President and Border Czar,

Defendants.

Case No. 3:26-cv-10680

**[PROPOSED] INTERROGATORIES**

**[PROPOSED] INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs California Nurses Association, National Nurses United, the City and County of San Francisco, the County of Santa Clara, and Voto Latino Foundation, through their counsel, hereby request that Defendants answer each Interrogatory listed below separately, fully, and under oath, by Tuesday, September 29, 2026, or no later than seven days before the Court schedules a hearing on Plaintiffs' Motion for APA Stay and Preliminary Injunction, whichever date is earlier. Documents produced must adhere to the Definitions and Instructions set forth below, the Federal Rules of Civil Procedure, and the Local Rules of the Northern District of California.

**DEFINITIONS**

1. "**Action**" refers to *California Nurses Association et al. v. Mullin et al.*, Civil Action No. 26-10680 (N.D. Cal.), Including any consolidated, related, or companion proceedings.

2. "**A-number**" means a seven-, eight- or nine-digit number that the U.S. Department of Homeland Security ("DHS") assigns to an individual in its U.S. Citizenship and Immigration Services ("USCIS") system.

3. "**Communication**" means the transmittal of information by any means, whether oral, written, or electronic, Including: policy statement, in-person conversation, telephone call, video call, radio transmission (Including via Zello or similar push-to-talk applications), email, text message, SMS, MMS, instant message, chat message (Including via WhatsApp, Signal, Telegram, iMessage, or any similar application), voice message, voicemail, memorandum, letter, report, briefing, slide deck, or any other method of conveying information between or among Persons. Oral communications are responsive to these

Requests to the extent that a Document memorializing, summarizing, referring to, or reflecting the substance of the communication exists.

4. "**Complaint**" means the Complaint filed on September 18, 2026 (ECF No. 1) in this Action.

5. "**Concerning**," "**Relating to**," or "**Regarding**" means referring to, describing, evidencing, constituting, mentioning, reflecting, generated by, generated in connection with, arising out of, responsive to, or pertaining in any way to the subject of the Request. These terms shall be construed broadly.

6. "**Database**" means any system, platform, repository, registry, index, list, watchlist, application, network, data store, data warehouse, data lake, shared drive, cloud storage, case management system, records management system, or other organized collection of data or records—however denominated and regardless of the technology used to create, store, or maintain it—that is maintained, accessed, used, or interoperable with any system used by any Defendant or Defendant agency, including:

a. TECS (formerly the Treasury Enforcement Communications System);

b. the Significant Event Notification (SEN) system;

c. the Significant Prospective Event Awareness Report (SPEAR) system;

d. the Enforcement Integrated Database (EID);

e. the Investigative Case Management (ICM) system;

f. any successor, component, linked, federated, or interoperable system of any of the foregoing.

7. "**Defendants**" means all named Defendants in this Action and, for the purpose of these discovery requests, includes their respective agencies, sub-agencies, offices, components, field offices, regional offices, task forces, and joint operations centers, and all

current and former officers, employees, agents, detailees, contractors, task force officers, and any other Persons acting on their behalf or under their direction. "Defendants" includes Markwayne Mullin, in his official capacity as Secretary of Homeland Security; the U.S. Department of Homeland Security ("DHS"); U.S. Citizenship and Immigration Services ("USCIS"); Joseph B. Edlow, in his official capacity as Director of USCIS; U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella, in his official capacity as Senior Official Performing the Duties of the Director of ICE; Anthony Salisbury, in his official capacity as Executive Associate Director of Homeland Security Investigations ("HSI") and the Principal Deputy Homeland Security Adviser to the White House; U.S. Customs and Border Protection ("CBP"); Rodney S. Scott, in his official capacity as Commissioner of CBP; and Thomas Homan, in his official capacity as Assistant to the President and Border Czar.

8. "**Derivative Citizen**" means an individual who is a U.S. citizen but who may have never received documentation of U.S. citizenship or whose citizenship may not appear in government information systems because they automatically became citizens as children when their parents naturalized or when they were adopted by U.S. citizens, consistent with 8 U.S.C. § 1431 and USCIS policy.[1]

9. "**Document**" has the broadest meaning permitted under Federal Rule of Civil Procedure 34(a) and shall be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in Rule 34(a)(1)(A). The term includes all writings, recordings, images, and electronically stored information of any kind, whether in paper, electronic, photographic, or any other form. Without limiting the generality of the

[1] U.S. Citizenship & Immigr. Servs., *USCIS Policy Manual*, vol. 12, pt. H, ch. 4 (last updated Mar. 28, 2024), https://perma.cc/UG7W-HEKE.

foregoing, the term includes: correspondence, memoranda, emails, text messages, SMS/MMS messages, instant messages, chat messages (Including via WhatsApp, Signal, Telegram, iMessage, Zello, or any similar application), social media messages or posts, radio transmissions (to the extent recorded or logged), voice messages, voicemail, notes, reports, forms, applications, logs, photographs, images, video recordings, audio recordings, files, database entries, database query results and outputs, spreadsheets, presentations, slide decks, calendars, task lists, metadata, audit trails, system-generated alerts, automated notifications, and any drafts, non-identical copies, attachments, or enclosures of or to the foregoing. A draft or non-identical copy is a separate document within the meaning of this term.

10. "**Government Official**" means any current or former officer, employee, appointee, contractor, or agent of any Defendant or Defendant agency during the time period specified in the Instructions herein.

11. "**HSI-USCIS Coordination Memo**" means the August 2026 DHS memorandum directing HSI agents to coordinate with USCIS regarding DHS inquiries linking a purported non-U.S. citizen to alleged unlawful participation in elections. *See* Plaintiffs' Motion for APA Stay and Preliminary Injunction, Declaration of Beau Tremitiere ("Tremitiere Decl."), Ex. 20. It represents a policy document and implementation of the **"Unlawful Voter Initiative"** as defined below, and specifically Defendants' Voter Eligibility Matching Policy, as further defined and described in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 5, 65, 113–189. The title of the document used here and in Plaintiffs' filings is to provide a shorthand for description of the August 2026 memorandum and includes the same document by a different title known only to Defendants.

12. "**HSI Targets Memo**" means the June 2026 DHS letter memorandum ordering HSI to devote resources to arrest and deport alleged non-U.S. citizens DHS believes were

improperly registered or had voted, as reported in a DHS press release dated June 9, 2026. *See* Tremitiere Decl., Ex. 27. It represents a policy document and implementation of the **"Unlawful Voter Initiative"** as defined below. The title of the document used here and in Plaintiffs' filings is to provide a shorthand for description of the June 2026 letter memorandum and includes the same document by a different title known only to Defendants.

13. "**Identify**" means:

a. with respect to a natural Person: to state the person's full name, title, rank, badge or employee number (if applicable), employing agency or component, duty station or field office, and last known contact information;

b. with respect to a Document: to state the date, author, recipient(s), type (e.g., email, memorandum, audit log entry), title or subject matter, Bates or production number (if produced), and present custodian or location;

c. with respect to a Communication: to state the date, location, participants, subject matter, and whether any Document memorializing or referring to the communication exists.

14. "**Including**" means including but not limited to.

15. "**Person**" means any natural person or any legal entity, including, without limitation, any business, governmental entity, agency, component, or association.

16. "**Plaintiffs**" means the California Nurses Association, National Nurses United, the City and County of San Francisco, the County of Santa Clara, and Voto Latino Foundation.

17. "**Reflecting**" means constituting, comprising, describing, depicting, evidencing, or illustrating.

18. "**Supplemental Magic**" means the term used in a September 8, 2026, USCIS whistleblower disclosure, *see* Tremitiere Decl., Ex. 2 at 19, 22, 29, to describe a process or system used to identify subjects for elections-related investigations.

19. "**Surge Initiative Guidance**" means the guidance from DHS to the HSI unit of the ICE agency instructing HSI to engage in a "coordinated criminal voter fraud surge initiative to pursue investigative leads, conduct field interviews, and support timely prosecutorial review," as reported by CNN to take effect on September 1, 2026. *See* Tremitiere Decl., Ex. 4. It represents a policy document and implementation of the **"Unlawful Voter Initiative"** as defined below, and specifically Defendants' Field Operations Policy, as further defined and described in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 5–8, 19, 65, 70–112.

20. **"Unlawful Voter Initiative"** is the overarching DHS policy, reported in news articles, *e.g.*, Tremitiere Decl., Ex. 3, and as further explained and defined in Plaintiffs' Complaint, *see, e.g.*, Compl. ¶¶ 1, 5, 62–65, that includes both the data sourcing and matching component and the field operations component of Defendants' challenged voter intimidation scheme, *see, e.g.*, Compl. ¶¶ 74–206.

**INSTRUCTIONS**

1. **Governing Rules**. In addition to the specific instructions below, these Requests incorporate the requirements of Federal Rules of Civil Procedure 26 and 33, the Local Rules of the Northern District of California, and any operative scheduling, ESI, or protective order entered or that may be entered in this Action. To the extent any Instruction conflicts with an applicable Federal Rule, the Federal Rule of Civil Procedure controls.

2. **Scope**. These Interrogatories are directed to all Defendants and call for the disclosure of all responsive information within the knowledge, possession, custody, or control of Defendants, Including information known to or held by any current or former officer,

employee, agent, detailee, contractor, task force officer, or other person directly or indirectly employed or retained by, or acting on behalf of, DHS, ICE, CBP, HSI, the Office of the Secretary of Homeland Security, the Office of Intelligence and Analysis ("I&A"), or any component, sub-agency, field office, regional office, task force, or joint operations center thereof.

3. **Time Period**. Unless otherwise specified in a particular Interrogatory, the relevant period for these Interrogatories covers the period from June 1, 2026, through the date of production.

4. **Answers Under Oath**. Pursuant to Federal Rule of Civil Procedure 33(b)(3), each response must be made under oath. The officer or agent who furnishes the information for each Interrogatory response must be identified by name, title, and employing agency or component.

5. **Full and Complete Responses**. Each Interrogatory shall be answered separately, and as fully and completely as information known or available to Defendants permits. If an Interrogatory cannot be answered fully, it shall be answered to the extent possible, with an explanation of why a full answer cannot be provided, a statement of the information currently available, and a description of what efforts Defendants have undertaken and will undertake to obtain any missing and/or remaining information.

6. **Lack of Information**. If Defendants lack information to answer any Interrogatory completely, so state in writing, Including specifying (a) the responsive information currently available; (b) the responsive information currently unavailable and the reasons for its unavailability; (c) the efforts Defendants have undertaken to obtain the unavailable information; and (d) when Defendants anticipate the unavailable information will become available.

7. **Privilege**. If Defendants withhold any responsive information to any portion of any Interrogatory based upon any privilege, protection, or immunity, Defendants must state: (a) the nature of the information withheld; (b) the specific privilege asserted (e.g., attorney-client, work product, deliberative process, law enforcement, state secrets); and (c) the factual basis for the assertion, Including, for any claim of deliberative process privilege, the specific decision to which the withheld information relates, and for any claim of law enforcement privilege, a declaration from an appropriate agency official identifying the specific harm disclosure would cause.

8. **Objections**. If Defendants object to all or any portion of any Interrogatory, Defendants must: (a) identify the objectionable Interrogatory or portion thereof; (b) state the nature and basis of the objection with specificity; and (c) notwithstanding the objection, produce all documents and information to which the objection does not apply. An objection to part of an Interrogatory does not justify withholding information responsive to the remainder.

9. **Retention of Originals**. Defendants must retain all original documents responsive to these Requests for inspection or copying throughout the pendency of this Action, any appeal(s), and any related proceedings.

10. **Construction**. In construing these terms:

a. Terms not specifically defined shall be given their ordinary meaning.

b. The use of a verb in any tense shall be construed as the use of the verb in all other tenses as necessary to bring within the scope of any Request all responsive information.

c. The singular includes the plural and vice versa.

d. The connectives “and” and “or” shall be construed either disjunctively or conjunctively as necessary to make any Request inclusive rather than exclusive.

e. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

f. "Including" means "including but not limited to."

11. **No Admissions**. None of the Definitions, Instructions, or Interrogatories set forth herein shall be construed as an admission relating to the existence, relevance, or admissibility of any evidence, or to the truth or accuracy of any statement or characterization herein.

12. **Continuing Obligation**. These Interrogatories are continuing in nature. If Defendants become aware of additional responsive documents or information, or information inconsistent with that previously produced, prompt supplementation pursuant to Federal Rule of Civil Procedure 26(e) is required. Plaintiffs specifically reserve the right to seek supplementary information and serve additional Interrogatories prior to the close of the Action.

13. **Agency Coordination**. To the extent responsive information is held by multiple Defendant agencies or components, Defendants shall coordinate their efforts to ensure completeness and shall not rely on inter-agency or inter-component referral processes that would delay responses beyond the deadline specified herein.

14. **Proportionality**. These Interrogatories have been drafted consistent with the proportionality principles of Federal Rule of Civil Procedure 26(b)(1). Plaintiffs have intentionally limited the number of their First Requests for Production to only seven Requests, expressly in the interest of proportionality and expedition. Plaintiffs reserve all rights to modify, supplement, or otherwise augment these Requests as the Action proceeds.

**INTERROGATORIES**

1. **INTERROGATORY NO. 1:** Identify all policies, training materials, or criteria Defendants use, have used, or plan to use in implementing the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance, to avoid conducting operations that would risk violating federal and state prohibitions of voter intimidation, including under 52 U.S.C. § 10307(b).

2. **INTERROGATORY NO. 2:** Identify all policies, training materials, or criteria Defendants use, have used, or plan to use to ensure their field operations implementing the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance, do not target U.S. citizens, including naturalized citizens, citizens who live in mixed immigration status households, derivative citizens, and U.S. citizens who petitioned for spousal citizenship.

**3.** **INTERROGATORY NO. 3:** Identify all policies, guidance, or training materials relating to documenting or accounting for interactions with U.S. citizens during operations undertaken to implement the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance.

4. **INTERROGATORY NO. 4:** Identify all types of reports and databases used to create or store reports and records relating to operations undertaken to implement the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance.

5. **INTERROGATORY NO. 5:** Identify any project code, case name, and case number used to label, track, or denominate reports and records relating to operations undertaken to implement the Unlawful Voter Initiative, and specifically the Surge Initiative Guidance.

6. **INTERROGATORY NO. 6**: Identify each official who created, developed, or drafted, or assisted in creating, developing, or drafting, the Surge Initiative Guidance, the HSI-USCIS Coordination Memo, and the HSI Targets Memo, including any training materials or other documents reflecting the Surge Initiative Guidance, the HSI-USCIS Coordination Memo, or the HSI Targets

Memo, and identify each official who authorized, approved, directed, or materially participated in any decision to authorize and deploy field operations under the Surge Initiative Guidance, including the date of authorization and the official's title.

7. **INTERROGATORY NO. 7**: Identify any criteria, programs, or documents concerning what the Agency means when it says data is "brought in through supplemental magic," Tremitiere Decl., Ex. 2 at 3, including identifying the names of the tools or programs (such as generative artificial intelligence) used to impute A-numbers or Social Security numbers into information systems or databases containing voter registration information, or vice versa imputing voter registration information into databases or information systems containing A-numbers of Social Security numbers.