**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION, et al.,<br>*Plaintiffs*,<br><br>V.<br><br>MULLIN, et al.,<br>*Defendants*. | Case No. 4:26CV10680 |

**DECLARATION OF NICOLAS BARTELL**

I, Nicolas Bartell, pursuant to 28 U.S.C. § 1746, do hereby declare that the following is true and correct to the best of my understanding and belief:

1. I am Associate Director of Fraud Detection and National Security ("FDNS") Directorate of U.S. Citizenship and Immigration Services ("USCIS") within the Department of Homeland Security ("DHS").

2. In this capacity, I am responsible for oversight of USCIS' fraud and national security mission.

3. I make this Declaration based on my personal knowledge, upon information provided to me in my official capacity, and my review of agency records.

4. FDNS supports USCIS in safeguarding the integrity of the lawful immigration system and identifying matters involving fraud, national security, or public-safety concerns. FDNS personnel conduct administrative inquiries, analyze information

from authorized sources, document findings, and provide information to USCIS adjudicators, Homeland Security Investigations (HSI) agents, and other authorized government personnel.

5. FDNS activities may include reviewing agency records and immigration filings; evaluating fraud-related leads and referrals; conducting administrative inquiries, interviews, or site visits when authorized and appropriate; identifying potentially relevant inconsistencies or derogatory information; coordinating with other government entities consistent with applicable authorities; and referring matters to agencies with investigative or prosecutorial jurisdiction.

6. FDNS Immigration Officers do not prosecute criminal offenses or independently determine criminal guilt. FDNS's role is principally administrative and investigative in support of USCIS's responsibilities. USCIS adjudicators retain responsibility for immigration-benefit decisions, and suspected criminal conduct may be referred to an agency possessing appropriate investigative or prosecutorial authority, which may include the FDNS Criminal Investigations Division.[1]

7. Information indicating that an alien may have unlawfully registered to vote; voted in a federal, state, or local election; or falsely represented United States citizenship can be relevant to the enforcement of 18 U.S.C. § 611 (illegal alien voting) and 18 U.S.C. § 1015(f) (false statement to United States citizenship). It can also be directly relevant to USCIS's immigration benefit decisions.

---

As of October 6, 2025, pursuant to the delegation of former Secretary of Homeland Security Kristi Noem's law enforcement authority to the Director of USCIS, and subsequent re-delegations, FDNS was designated a law enforcement entity. The newly created FDNS Criminal Investigative Division (CID) employs special agents invested with the authority to enforce immigration-related laws. CID was not directly involved in the investigations into unlawful voting.

8. When FDNS receives information that can be used to identify potential unlawful voting, its general role is to assess and develop relevant facts. A lead or data match is not, by itself, a final determination that a person voted unlawfully. Similar names, incomplete records, outdated citizenship information, clerical errors, and other circumstances may require further manual review of all available data. FDNS therefore seeks to confirm identity and evaluate the available evidence before reporting a substantiated finding or making a referral for further investigation.

9. Executive Order 14248 directed federal action concerning election integrity. In support of the Executive Order and consistent with DHS and USCIS authorities, FDNS implemented efforts to review aliens who potentially registered or voted unlawfully and naturalized U.S. citizens that potentially registered or voted in a federal election prior to naturalization.

10. USCIS receives voter information through a variety of sources, including, but not limited to, information voluntarily provided by state and local jurisdictions, publicly available information, and other lawfully available data. . USCIS compares voter information received from these sources against DHS and commercial database holdings to ascertain whether there is a potential identity match. This is not a haphazard process but rather a rigorous analysis of available biographic data, to include but not limited to key identifiers such as first name, last name, date of birth, addresses, and other biographic information. Throughout its analysis FDNS seeks to exclude any United States Citizens from further review.

11. Certain voter information was also referred through SAVE. SAVE is an online service that provides point-in-time information to federal, state, and local agencies by querying other existing federal record systems. SAVE is not a database.

12. Before the order entered in the League of Women Voters (LWV) litigation, The SAVE program office could refer information related to a SAVE query to FDNS for additional investigation when there were indications of fraud and potential unlawful activity. The SAVE program office only referred cases when an individual positively matched federal records indicating a status other than U.S. Citizen.

13. Following the LWV order, SAVE stopped referring such information to FDNS. FDNS was permitted to continue using and reviewing information that SAVE had referred before the order because, by that time, the information was maintained under the applicable FDNS System of Records Notice ("SORN").

14. Information referred through SAVE constituted only a small portion of the information reviewed by FDNS in connection with potential unlawful voter registration or voting. The substantial majority of the information FDNS reviewed came from sources other than SAVE, including information voluntarily provided by state and local jurisdictions, publicly available information, and other lawfully available data.

15. FDNS is not a SAVE User Agency and does not have access to the SAVE service.

16. DHS does not use SAVE for administrative (non-criminal) immigration enforcement.

17. FDNS treats all referred information as potential leads of unlawful voting activity, subject to additional review. FDNS weighed the risk of inaccurate or incomplete

information, including the possibility that in rare circumstances U.S. citizens might be incorrectly identified as aliens, against the importance of identifying matters that might warrant investigation and concluded that the process could proceed with safeguards intended to reduce the risk of an erroneous referral.

18. Such safeguards include checking available databases using all available information to match the identity and confirm the citizenship status of all individuals referred, to the extent possible, prior to sending any referrals to HSI for further investigation. This process was designed so that an initial system match would not, standing alone, constitute a final determination regarding an individual's citizenship, voter eligibility, or possible violation of law.

19. In particular, before making a referral to HSI, FDNS manually reviews authorized DHS records and other lawfully available information to verify the individual's identity and determine whether the available evidence sufficiently supports the referral. If the records indicate that the person may have acquired or derived U.S. citizenship, contain material discrepancies, or otherwise do not adequately support alien status, FDNS concludes its review and does not refer it to HSI unless the data indicate that the person may have voted or registered to vote prior to naturalization.

20. In taking the actions described above, FDNS did not "disregard" the possibility that U.S. citizens could, at some point, be erroneously identified as potential aliens in federal records. Rather, FDNS considered that low possibility, but determined that, given the information available to FDNS, the risks to any U.S. citizens was mitigated through the safeguards described above, and any remaining risks were outweighed by the need to support the agency's law-enforcement and election-integrity mission.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of September 2026 in Camp Springs, Maryland

X NICOLAS S BARTELL

Digitally signed by NICOLAS S BARTELL
Date: 2026.09.28 20:23:41 -04'00'

Nicolas Bartell
Associate Director

Fraud Detection and National Security
United States Citizenship and Immigration Services