**PROTECT DEMOCRACY PROJECT**
BEAU C. TREMITIERE, SBN 320074
300 Center Ave, Suite G-251
Superior, CO 80027
GEOFFREY CURFMAN* NY Bar No. 5809199
JESSICA MARSDEN* NY Bar No. 5316526
82 Nassau St., #601
New York, NY 10038
HAYDEN JOHNSON* DC Bar No. 1671830
ZACHARY WEST* NY Bar No. 5192257
ASHLEY FOX* LA Bar No. 41748
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Telephone:(202) 579-4582
Facsimile: (202) 769-3176
E-Mail:
beau.tremitiere@protectdemocracy.org
geoffrey.curfman@protectdemocracy.org
jess.marsden@protectdemocracy.org
hayden.johnson@protectdemcracy.org
zachary.west@protectdemocracy.org
ashley.fox@protectdemocracy.org

**NATIONAL IMMIGRATION LAW CENTER**
BENJAMIN R. FARLEY* DC Bar No. 90042585
IMANI FRANKLIN* DC Bar No. 90006160
PO Box 34573
Washington, D.C. 20043
Telephone:(213) 639-3900
Facsimile: (202) 738-9128
E-mail: farley@nilc.org
franklin@nilc.org

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION, NATIONAL NURSES UNITED, and VOTO LATINO FOUNDATION

**CITY AND COUNTY OF SAN FRANCISCO**
DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MICHAEL A. KEOUGH, SBN 327037
Special Counsel
JOEL F. WACKS, SBN 326561
Deputy City Attorney
Fox Plaza, 1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone:(415) 554-4700
Facsimile: (415) 437-4644
E-Mail: Michael.Keough@sfcityatty.org
Joel.Wacks@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

**COUNTY OF SANTA CLARA**
TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
BILL NGUYEN, SBN 333671
Deputy County Counsel
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:(408) 299-5900
Facsimile: (408) 292-7240
E-Mail: bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

**Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director of the United States Immigration and Customs Enforcement; ANTHONY SALISBURY, in his official capacity as Executive Associate Director of Homeland Security Investigations and the Principal Deputy Homeland Security Adviser to the White House; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; and THOMAS HOMAN, in his official capacity as Assistant to the President and Border Czar,<br><br>Defendants. | Case No. 4:26-cv-10680-AMO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPLETE THE ADMINISTRATIVE RECORD OR, IN THE ALTERNATIVE, TO SUPPLEMENT THE RECORD WITH EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: November 5, 2026<br>Time: 11:00am<br>Before: Hon. Araceli Martínez-Olguín<br>Location: Courtroom 5, 2nd Floor of the United States District Court for the Northern District of California Oakland Division |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

NOTICE OF MOTION AND MOTION ........ iv

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. Defendants' Proffered Administrative Record is Inadequate and Must be Completed. ........ 5

II. In the Alternative, the Administrative Record Should be Supplemented Through Discovery. ........ 9

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Cases**

*American Federation of Government Employees v. Trump*,
No. 25-CV-03698, 2025 WL 2578412 (N.D. Cal. Aug. 6, 2025)....9, 10

*Califano v. Sanders*,
430 U.S. 99 (1977)....5

*Camp v. Pitts*,
411 U.S. 138 (1973)....5

*Center for Food Safety v. Vilsack*,
No. 15CV01590HSGKAW, 2017 WL 1709318 (N.D. Cal. May 3, 2017)....5

*City of Dania Beach v. FAA*,
628 F.3d 581 (D.C Cir. 2010)....5

*Doe 1 v. Nielsen*,
No. 18-CV-02349, 2018 WL 4266870 (N.D. Cal. Sep. 7, 2018)....9

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729 (2018)....4

*Hispanic Affairs Project v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018)....9

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005)....4, 9

*League of Women Voters v. DHS*,
835 F. Supp. 3d 79 (D.D.C. 2026)....8

*League of Women Voters v. DHS*,
No. 26A308, 2026 WL 2879700 (U.S. Sep. 25, 2026)....8

*Luis & Delta-Mendota Water Authority v. Locke*,
776 F.3d 971 (9th Cir. 2014)....9

*National Urban League v. Ross*,
No. 20-CV-05799, 2020 WL 5441356 (N.D. Cal. 2020)....4

*Oceana, Inc. v. Ross*,
454 F. Supp. 3d 62 (D.D.C. 2020)....5

*Thompson v. United States Department of Labor*,
885 F.2d 551 (9th Cir. 1989)....5

*Venetian Casino Resort, LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008)....9

**Statutes**

5 U.S.C. § 552a ........................................................................................................10

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 ........................................8, 10

**Other Authorities**

Department of Homeland Security,
*Privacy Threshold Analysis* (2025), https://www.dhs.gov/publication/privacy-threshold-analysis ........................................................................................8, 10

Department of Homeland Security,
*Privacy Threshold Analysis for the Systematic Alien Verification for Entitlements Program* (Feb. 7, 2023), https://perma.cc/A44N-4729 .....................................................8

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 11:00 a.m. Thursday, November 5, 2026, or as soon thereafter as may be heard[1] before the Honorable Araceli Martínez-Olguín in Courtroom 5, 2nd Floor of the United States District Court for the Northern District of California, located in Oakland, California, all Plaintiffs will and hereby do move the Court for an order requiring completion of the administrative record, or in the alternative, supplementation of the administrative record with expedited discovery, issued against Defendants Markwayne Mullin, in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; United States Citizenship and Immigration Services; Joseph B. Edlow, in his official capacity as Director of United States Citizenship and Immigration Services; United States Immigration and Customs Enforcement; David J. Venturella, in his official capacity as Senior Official Performing the Duties of the Director of the United States Immigration and Customs Enforcement; Anthony Salisbury, in his official capacity as Executive Associate Director of Homeland Security Investigations and the Principal Deputy Homeland Security Adviser to the White House; United States Customs and Border Protection; Rodney S. Scott, in his official capacity as Commissioner of United States Customs and Border Protection; and Thomas Homan, in his official capacity as Assistant to the President and Border Czar. Plaintiffs respectfully move this Court to issue an order requiring Defendants to complete the administrative record on or before Monday October 5, 2026.

Plaintiffs' Motion is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the accompanying supporting declaration and exhibit thereto, the Complaint, as well as the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this Motion is heard by the Court.

[1] Plaintiffs concurrently move to shorten time because relief on this motion is needed urgently.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case involves a sprawling and ongoing initiative by the Department of Homeland Security ("DHS") to interrogate voter eligibility and surge field operations in communities across the country while electoral activity is at its height. Last week, this Court recognized the urgency in resolving Plaintiffs' request for preliminary relief, convening an immediate status conference, ordering expedited production of the administrative record, and setting an expedited briefing and hearing schedule for the motion for preliminary relief.

Yesterday was the deadline for Defendants to produce the administrative record. Instead, Defendants sent Plaintiffs (i) copies of executive orders issued in March 2025 and 2026, (ii) a two-page email from March 2026, and (iii) a weekly bulletin from August 2026. In total, the submission was 25 pages—16 of which are executive orders published in the Federal Register. Of the remaining nine pages, six are either completely or almost completely redacted—giving the Court three pages of information with which, in Defendants' view, it should resolve the weighty issues presented. This production falls far short of the complete and sufficient administrative record required by law and necessary here for a full and fair hearing on the issues before the Court—namely, whether Defendants are engaging in unlawful voter intimidation, impermissibly burdening the fundamental right to vote, and pursuing an arbitrary and capricious data matching and field investigation policy.

Plaintiffs respectfully request that the Court order Defendants to promptly complete the administrative record with the specific documents and materials specified below, or in the alternative, order Defendants to supplement the administrative record with these documents and materials, as well as with narrowly targeted, expedited discovery to clarify the scope of the challenged policy. Because Defendants' deficient production precludes the parties or the Court from engaging in a complete assessment of the issues, Plaintiffs further request that the Court convert the October 1, 2026 hearing on the preliminary relief into a hearing on this Motion and order an updated schedule on the pending reply brief and preliminary relief hearing to account for the time necessary for the complete or supplemental production.

**BACKGROUND**

On September 18, 2026, Plaintiffs filed a complaint challenging DHS's self-titled Unlawful Voter Initiative Policy, under which DHS has adopted publicly known policy memoranda and a pattern of conduct indicating two implementing policies, which Plaintiffs refer to as the Voter Eligibility Matching Policy and the Field Operations Policy. The documents and other materials comprising these policies are not publicly available, but extensive reporting in recent weeks and a Whistleblower Disclosure published September 14, 2026, *see* Plaintiffs' Motion for a Preliminary Injunction and Stay, Declaration of Beau Tremitiere ("Tremitiere Decl."), Ex. 2, ECF 10-7 at 18–51, have identified many of the core components.

Regarding the Voter Eligibility Matching Policy, public reporting shows that, in August 2026, HSI was ordered to coordinate with agents of U.S. Citizenship and Immigration Services (USCIS) to generate target lists of individuals for investigations into unlawful voting activity. Tremitiere Decl., Ex. 20, ECF 10-7 at 198–202. Further, according to the Whistleblower Disclosure issued by an anonymous informant with "direct knowledge" of the documents and processes comprising the Voter Eligibility Matching Policy, USCIS adopted a policy to identify subjects for investigations concerning unlawful voting, as laid out in a training video and other materials the whistleblower quoted extensively in the disclosure. Tremitiere Decl., Ex. 2, ECF 10-7 at 19, 23. That target-identification process includes generating a presumptive list of individuals believed to have voted or registered to vote as noncitizens, attempting to match records from the presumptive list of supposed noncitizen voters with information in state voter files, and then creating a TECS record against each identified person unless an employee is able to rule out the possibility that they registered or voted unlawfully. Tremitiere Decl., Ex. 2, ECF 10-7 at 36. The whistleblower detailed an array of fundamental flaws in this data-matching process, including a high likelihood—of which USCIS was aware—that the presumptive list would include U.S. citizens, Tremitiere Decl., Ex. 2, ECF 10-7 at 36–37, 44–51, and that the processes used to narrow the list of subjects would still leave a substantial number of U.S. citizens exposed to investigations, Tremitiere Decl., Ex. 2, ECF 10-7 at 24, 36–37, 46. The whistleblower specified that USCIS employees had raised concerns related to this process with agency officials. Tremitiere Decl., Ex. 2, ECF 10-7 at 21. And the whistleblower

further indicated that USCIS employees were allowed just 12 minutes per presumptive investigatory target to decide whether or not to refer them for further HSI investigation. Tremitiere Decl., Ex. 2, ECF 10-7 at 20.

Extensive reporting also documents the contours of the Field Operations Policy. According to those reports, DHS issued an internal guidance document (the "Surge Initiative Guidance") that instructs the Homeland Security Investigations ("HSI") unit of U.S. Immigration and Customs Enforcement ("ICE") to, beginning on September 1, 2026, engage in field operations targeting individuals identified for voter-related investigations through DHS's Voter Eligibility Matching Policy. Tremitiere Decl., Ex. 4, ECF 10-7 at 62–66; *see also* AR-2-001–002. Public reporting, along with DHS's own public statements, confirms that these operations are underway at scale, with DHS posting on social media about specific operations in California, Missouri, and other states. Tremitiere Decl., Ex. 12, ECF 10-7 at 132, Ex. 13, ECF 10-7 at 135, Ex. 14, ECF 10-7 at 137, Ex. 15, ECF 10-7 at 140, Ex. 36, ECF 10-7 at 404, Ex. 37, ECF 10-7 at 406; AR-2-001–002.

Notwithstanding these public reports of complex policies DHS adopted to investigate unlawful voting activity, the administrative record the government produced to Plaintiffs is basically nothing. It contains only the Surge Initiative Guidance, in highly redacted form, *see* AR-2-001–007; a March 13, 2026, email—also with substantial, unjustified redactions—regarding activity by the Homeland Security Investigations (HSI) division of U.S. Immigration and Customs Enforcement (ICE) and USCIS, *see* AR-1-001–002; and two Executive Orders issued in March 2025 and March 2026 generally directing agencies to investigate unlawful voting activity, *see* AR-1-003, AR-2-008.

These materials are woefully underinclusive. Most prominently, they omit any documents, communications, procedures, or other materials comprising the Voter Eligibility Matching Policy, including the training materials documented in the Whistleblower Disclosure that lay out the processes making up this policy and the communications referenced in the Whistleblower Disclosure where agents expressed concerns related to the reliability of the process DHS was adopting. Nor do they include TECS records generated pursuant to the Voter Eligibility Matching Policy or any guidance related to entry of TECS records, which were before DHS when it adopted the Field Operations Policy targeting individuals identified through this process. Although Defendants

attached a declaration from a USCIS official purporting to describe the process used to exclude U.S. citizens from further investigation, Declaration of Nicolas Bartell in Support of the Government's Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Bartell Decl."), ECF 46-1, ¶¶ 8–20, the administrative record does not contain a single document or communication explaining or memorializing this process or any of the considerations DHS addressed in adopting it. Moreover, the Administrative Record fails to include other publicly revealed documents related to the Voter Eligibility Matching Policy like a September 1 email reportedly sent by a DHS official providing an update on DHS' progress in implementing that policy. Marsden Decl., Ex. 1.

Beyond the Surge Initiative Guidance itself, the record is also devoid of any documents or communications that make up the Field Operations Policy. The HSI official's declaration attached to Defendants' opposition alludes to "precautions" and a "layered vetting process" DHS purportedly follows to "to filter out [U.S. citizens] so they are not impacted by the HSI's investigations into unlawful voting." Declaration of [Anonymous] in Support of the Government's Opposition to Plaintiffs' Motion for a Preliminary Injunction ("HSI Decl."), ECF 46-2, ¶¶ 12, 18. Yet the administrative record—again—contains no documents, communications, or other materials describing or memorializing this process or any related considerations DHS took into account, or substantiating the declarant's bare assertions.

## ARGUMENT

By providing just two documents originating within the agency, the government has not provided an administrative record that is complete or sufficient for this Court's review of Plaintiffs' claims. In assessing the lawfulness of agency action—including claims that the administrative action is arbitrary and capricious or contrary to law, as alleged here—the Court is generally tasked with applying "the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (2018)). In order to enable judicial review, the agency must accordingly produce a record that "consists of 'all documents and materials directly or indirectly considered by agency decision-makers' at the time of the decision," *Nat'l Urb. League v. Ross*, No. 20-CV-05799, 2020 WL 5441356, at *12 (N.D. Cal. 2020) (quoting

*Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)), including "evidence contrary to the agency's position." *Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL 1709318, at *2 (N.D. Cal. May 3, 2017) (citing *Thompson*, 885 F.2d at 555). If the agency's administrative record "fail[s] to explain administrative action as to frustrate effective judicial review," the Court may order the agency to complete the record. *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Such an order is appropriate here.

## I. Defendants' Proffered Administrative Record is Inadequate and Must be Completed.

Defendants' proffered Administrative Record omits several documents (or categories of documents) known (or required by law) to be before the agency at the time it adopted the Unlawful Voter Initiative Policy, the Voter Matching Eligibility Policy, and/or the Field Operations Policy. The two agency documents it did produce are heavily redacted, and the government provided no justification for those redactions. AR-1-001–2; AR-2-001–007. Without those documents, Defendants have "failed to explain administrative action so as to frustrate effective judicial review," *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 69 (D.D.C. 2020) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C Cir. 2010)). For the following reasons, and in order to enable its review of agency actions, the Court should order the agency to produce the following documents as part of the administrative record before ruling on Plaintiffs' Motion for APA Stay and Preliminary Injunction:

- **HSI Targets Memo:** On June 9, DHS posted a press release announcing an internal directive to ICE leadership to order that the agency devote resources to arrest and deport alleged non-U.S. citizens who DHS believes were improperly registered or had voted, even absent any criminal adjudication that they had in fact committed such violations.[2] This memo appears to direct the creation of the Field Operations Policy, yet that memo is missing from the administrative record. Accordingly, the Court should order Defendants to produce as part of the administrative record:

---

[2] *See* U.S. Dep't of Homeland Sec., *DHS Directs ICE to Deport Aliens Who Vote in American Elections* (June 9, 2026), https://perma.cc/4DAB-LYYS.

  - A complete copy of the HSI Targets Memo dated on or about June 9, 2026.

- **Documents establishing the Voter Eligibility Matching Policy:** Defendants have failed to produce any contemporaneous documents establishing the Voter Eligibility Matching Policy. The Declaration of Nicolas Bartell states that, subsequent to Executive Order 14248, USCIS "implemented efforts to review aliens who potentially registered or voted unlawfully and naturalized U.S. citizens that potentially registered or voted in a federal election prior to naturalization." Bartell Decl., ECF 46-1 ¶ 9. But the administrative record is devoid of contemporaneous documentation of that policy. At a minimum, that documentation should include the protocol guiding USCIS's identification and review of targets, and all documents reflecting the use of SAVE or the use of "supplemental magic as part of the Voter Eligibility Matching Policy. Accordingly, the Court should order Defendants to produce as part of the administrative record:
  - All documents establishing the Voter Eligibility Matching Policy, including a complete copy of the materials referenced in the Whistleblower Disclosure (Tremitiere Decl., Ex. 2, ECF 10-7 at 19–51);
  - All documents reflecting the use of SAVE as part of the Voter Eligibility Matching Policy; and
  - All documents reflecting the use of "supplemental magic" in support of the Voter Eligibility Matching Policy.
- **Documents establishing Defendants' policies for protecting U.S. citizens:** According to the HSI Declaration, "potential inaccuracies were identified in the USCIS lists," leading HSI to "develop[] a new model for generating leads for HSI's unlawful voting investigations." HSI Decl., ECF 46-2 ¶ 19. Defendants rely on the accuracy of this "vetting" approach to challenge Plaintiffs' standing to bring this suit, Opp. Br., ECF 46 at 8, and in claiming that their overall policy was not arbitrary and capricious, Opp. Br., ECF 46 at 19–21. But the administrative record lacks documentation of the initial error rate for USCIS data collection; the "safeguards" used by USCIS to identify United States citizens, Bartell Decl., ECF 46-1 ¶ 18; the "layered vetting process" used by HSI to filter out United States citizens, HSI Decl.,

ECF 46-2 ¶ 12; any "DHS and ICE policies and investigative standards" governing investigations of United States citizen voters, HSI Decl., ECF 46-2 ¶ 15; all documents reflecting guidelines for the use of "available biographic data" used to identify United States citizens, including all sources of data used to support the Voter Eligibility Matching Policy, Bartell Decl., ECF 46-1 ¶¶ 10, 14; and all documents reflecting the "new model for generating leads for HSI's unlawful voting investigations", HSI Decl., ECF 46-2 ¶ 19. Accordingly, the Court should order Defendants to produce as part of the administrative record:

  - All documents reflecting "safeguards" used to identify United States citizens (Bartell Decl., ECF 46-1 ¶ 18);
  - All documents reflecting the "layered vetting process" used to filter out United States citizens (HSI Decl., ECF 46-2 ¶ 12);
  - All "DHS and ICE policies and investigative standards" governing investigations of United States citizen voters (HSI Decl., ECF 46-2 ¶ 15);
  - All documents reflecting guidelines for the use of "available biographic data" used to identify United States citizens, including all sources of data used to support the Voter Eligibility Matching Policy (Bartell Decl., ECF 46-1 ¶¶ 10, 14); and
  - All documents reflecting the "new model for generating leads for HSI's unlawful voting investigations" (HSI Decl., ECF 46-2 ¶ 19).

- **Privacy Threshold Analysis and Privacy Impact Assessment:** Defendants' declarants confirm that, following President Trump's executive orders, USCIS embarked on a new project to "review aliens who potentially registered or voted unlawfully and naturalized U.S. citizens that potentially registered or voted in a federal election prior to naturalization." Bartell Decl., ECF 46-1 ¶ 9; AR-1-001. When DHS launches new projects that require the collection and storage of personally identifiable information about individuals (for example, voter roll data and other information concerning voting activity), DHS is required by law to assess the privacy impacts of those projects. It uses at least two tools to do so: a Privacy Threshold Analysis, Dep't of Homeland Sec., *Privacy Threshold Analysis* (2025),

https://www.dhs.gov/publication/privacy-threshold-analysis, and then, if needed, a Privacy Impact Assessment, *see* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921 (codified at 44 U.S.C. § 3501 note). These have been produced as part of the administrative record when a new or modified data collection system is adopted. *See League of Women Voters v. DHS*, 835 F. Supp. 3d 79, 101 (D.D.C. 2026), *stay pending appeal granted*, No. 26A308, 2026 WL 2879700 (U.S. Sep. 25, 2026); *see also* Dep't of Homeland Sec., *Privacy Threshold Analysis for the Systematic Alien Verification for Entitlements Program* (Feb. 7, 2023), https://perma.cc/A44N-4729. Neither a Privacy Threshold Analysis nor a Privacy Impact Assessment is present in the current administrative record. Accordingly, the Court should order Defendants to produce as part of the administrative record:

  - All documents reflecting the Privacy Threshold Analysis and Privacy Impact Assessment for the Unlawful Voter Initiative, Voter Eligibility Matching Program, and/or Field Operations Program.

- **TECS records created by the Voter Matching Eligibility Policy:** Defendants initiated the Surge Initiative Guidance on August 31, 2026. By that point in time, operations pursuant to the Voter Matching Eligibility Program were underway. Tremitiere Decl., Ex. 2, ECF 10-7 at 20, 23. Any TECS records created prior to August 31 were therefore properly before the agency at the time they decided to surge resources to field operations that would rely on those TECS records. The relevance of TECS records to Plaintiffs' claims is heightened because of the HSI Declaration's statement that HSI changed its procedures due to inaccuracies in data coming from USCIS, HSI Decl., ECF 46-2 ¶ 19. Accordingly, the Court should order Defendants to produce as part of the administrative record:

  - All TECS records created by the Voter Eligibility Matching Policy prior to August 31, 2026.

In addition, the Court should order Defendants to cure their unjustified redactions of the administrative record by producing as part of the administrative record unredacted copies of the March 13, 2026 email and August 31, 2026, bulletin, or detailed explanations of why each redaction is justified.

## II. In the Alternative, the Administrative Record Should be Supplemented Through Discovery.

In the alternative, the Court should require Defendants to supplement the administrative record by producing the above documents and limited additional information in discovery because the administrative record proffered by Defendants does not provide sufficient information about those policies for the Court to assess their compliance with the Administrative Procedure Act—namely, whether the policies were arbitrary and capricious or contrary to law. "[A] reviewing court may consider extra-record evidence" where the evidence "is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision.'" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (quoting *Lands Council*, 395 F.3d at 1030). And in the context of policies adopted, as here, outside the APA's prescribed procedures for formal or informal rulemaking, additional productions may be necessary "to ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008)); *see also Am. Fed'n of Gov't Emps. v. Trump*, No. 25-CV-03698, 2025 WL 2578412, at *1 (N.D. Cal. Aug. 6, 2025); *Doe 1 v. Nielsen*, No. 18-CV-02349, 2018 WL 4266870, at *2 (N.D. Cal. Sep. 7, 2018) (allowing discovery "to determine the scope of the administrative record to be produced").

Such an order is necessary here because Defendants' administrative record is insufficient to allow for meaningful judicial review of Plaintiffs' claims under the Administrative Procedure Act. The record fails to include key information needed to assess the Voter Eligibility Matching Policy, including (1) the data sources and methodology used to generate DHS's initial target lists, (2) the methodology used to match targets with evidence from state voter files, and (3) the so-called "layered vetting" process the agency describes using to avoid law enforcement contact with U.S. citizens during the height of electoral activity.

Permitting discovery on these topics is particularly appropriate because Defendants appear to have circumvented procedural requirements that would have ensured that this information was preserved for the administrative record. The Privacy Act imposes both substantive and procedural requirements on agency collection and use of data about individuals, including requirements that

records be maintained "with such accuracy . . . as is reasonably necessary to assure fairness," 5 U.S.C. § 552a(e)(5). To ensure compliance with the Privacy Act, the E-Government Act of 2002 further requires that agencies complete a Privacy Impact Assessment prior to beginning a new program involving individuals' personal data. *See* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921 (codified at 44 U.S.C. § 3501 note). DHS further requires agencies to complete a Privacy Threshold Analysis for new policies or programs. As noted above, the administrative record contains no such Privacy Impact Assessment. Defendants should not be permitted to sidestep meaningful judicial review of the Voter Eligibility Matching Policy through their failure to comply with these predecisional procedural requirements. *See* Dep't of Homeland Sec., *Privacy Threshold Analysis* (2025), https://www.dhs.gov/publication/privacy-threshold-analysis.

For this reason, the Court should require Defendants to produce in discovery other documents that elaborate the nature of the data and data-matching methodology used as part of the Voter Eligibility Matching Policy and the Field Operations Policy. These could include documents identified above, if they are determined not to be properly part of the administrative record, or additional materials that "shed more light on the contours of the precise policy at issue," *Am. Fed'n of Gov't Emps.*, 2025 WL 2578412, at *1 (citation modified) , such as:

- All documents reflecting the data sources and methodology used for the Voter Eligibility Matching Policy to generate DHS's target list and to compare those targets to state voter files, reported in the USCIS whistleblower disclosure dated September 8, 2026. *See* Tremitiere Decl., Ex. 2, ECF 10-7 at 19–51.
- All documents reflecting the data sources used to conduct HSI's so-called "layered vetting" program as part of the Field Operations Policy.
- The training video, PowerPoint presentation, and any other documents used as part of a training administered on August 21, 2026, as reported in the USCIS whistleblower disclosure dated September 8, 2026. *See* Tremitiere Decl., Ex. 2, ECF 10-7 at 19–51.
- All documents and communications reflecting questions or concerns raised by current or former DHS employees relating to the reliability of the DHS data and the leads sent to HSI,

such as an internal DHS email from September 1 describing the status of voter roll review and reporting that DHS had only "some degree of confidence" that individuals flagged by the review were noncitizens who had "registered to vote and/or voted." *See* Marsden Decl., Ex. 1.

**CONCLUSION**

For the reasons stated above, the Court should grant Plaintiffs' motion for completion of the administrative record or, in the alternative, supplementation of the administrative record with expedited discovery.

DATED: September 29, 2026

Respectfully submitted,

By: */s/ Beau C. Tremitiere*
BEAU C. TREMITIERE
Counsel
GEOFFREY CURFMAN*
Counsel
HAYDEN JOHNSON*
Counsel
ZACHARY WEST*
Counsel
JESSICA MARSDEN*
Counsel
ASHLEY FOX*
Counsel

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION,
NATIONAL NURSES UNITED, AND
VOTO LATINO FOUNDATION

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
MICHAEL A. KEOUGH
Special Counsel
JOEL F. WACKS
Deputy City Attorney

By: */s/ Michael A. Keough*
MICHAEL A. KEOUGH
Special Counsel

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
BILL NGUYEN
Deputy County Counsel

By: */s/ Bill Nguyen*
BILL NGUYEN
Deputy County Counsel

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

BENJAMIN R. FARLEY*
Counsel
IMANI FRANKLIN*
Counsel

By: */s/ Benjamin R. Farley*
BENJAMIN R. FARLEY*
Counsel

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION,
NATIONAL NURSES UNITED, AND
VOTO LATINO FOUNDATION

**Admitted Pro Hac Vice*

**FILER'S ATTESTATION**

I, Beau Tremitiere, am the ECF user whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

DATED: September 29, 2026

Respectfully submitted,

By: */s/ Beau C. Tremitiere*
BEAU C. TREMITIERE
Counsel