CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748
kelsey.helland@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>Defendants. | Case No. 4:26-cv-10680-AMO<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD**<br><br>Date: October 6, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br><br>The Honorable Araceli Martínez-Olguín |

## TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. BACKGROUND ....... 2
III. ARGUMENT ....... 4
A. Plaintiffs' Motion To Complete the Administrative Record Should Be Denied ....... 4
1. Documents not considered by decisionmakers are not part of the AR. ....... 5
2. Documents reflecting pre-existing agency practices are not part of the AR. ....... 6
3. Post-decision documents are not part of the AR. ....... 7
B. Plaintiffs' Additional Requested Documents Do Not Belong In the AR. ....... 7
1. Documents "establishing the [so-called] Voter Eligibility Matching Policy" ....... 7
2. Documents "establishing policies for protecting U.S. citizens" ....... 9
3. Privacy analyses ....... 11
C. The Court Should Deny Plaintiffs' Request For Discovery ....... 11
D. Defendants' Redactions Are Proper ....... 13
IV. CONCLUSION ....... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 13

*Blue Mountains Biodiversity Project v. Jeffries*,
99 F.4th 438 (9th Cir. 2024) .......... 4, 5, 8, 10

*Blue Ocean Inst. v. Gutierrez*,
503 F. Supp. 2d 366 (D.D.C. 2007) .......... 6

*California v. U.S. Dep't of Labor*,
No. 2:13-CV-02069-KJM-DAD, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) .......... 14

*Camp v. Pitts*,
411 U.S. 138 (1973) .......... 12

*City of Dania Beach v. FAA*,
628 F.3d 581 (D.C. Cir. 2010) .......... 6

*Common Sense Salmon Recovery v. Evans,*
217 F. Supp. 2d 17 (D.D.C. 2002) .......... 11

*Conservation Force v. Salazar*,
No. 1:10-CV-1262 BJR, 2012 WL 11947683 (D.D.C. Feb. 6, 2012) .......... 12

*Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*,
No. 20-CV-103, 2020 WL 5642287 (D.D.C. Sept. 22, 2020) .......... 5

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) .......... 4, 7

*DHS v. League of Women Voters*,
No. 26A308, 2026 WL 2879700, 609 U.S. __ (Sept. 25, 2026) .......... 9

*Dist. Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) .......... 6

*Dist. Hosp. Partners, L.P. v. Sebelius*,
971 F. Supp. 2d 15 (D.D.C. 2013) .......... 6, 12

*FDIC v. Bank of Am., N.A.*,
No. CV 17-00036 EGS/DAR, 2020 WL 2463934 (D.D.C. Jan. 27, 2020) .......... 6

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) .......... 4

*Friends of the Clearwater v. Dombeck*,
222 F.3d 552 (9th Cir. 2000) .......... 11

*Friends Of The Earth v. U.S. Dep't of Interior*,
236 F.R.D. 39 (D.D.C. 2006) .......... 7

*Goffney v. Becerra*,
995 F.3d 737 (9th Cir. 2021) .......... 4, 5

*Great Am. Ins. Co. v. United States*,
No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) .......... 14

*Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026) .......... 13

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
709 F.3d 44 (D.C. Cir. 2013) .......... 5

*Hosp. Bus. Servs., Inc. v. Jaddou*,
No. CV 19-0198 (EGS), 2021 WL 4262653 (D.D.C. Sept. 20, 2021) .......... 8

*James Madison Ltd. ex rel. Hecht v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) .......... 6

*League of Women Voters v. DHS*,
835 F. Supp. 3d 79 (D.D.C. 2026) .......... 8, 9, 11

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 7

*Midcoast Fishermen's Ass'n v. Gutierrez*,
592 F. Supp. 2d 40 (D.D.C. 2017) .......... 12

*Occidental Petroleum Corp. v. SEC*,
873 F.2d 325 (D.C. Cir. 1989) .......... 5

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) .......... 14

*Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*,
573 F. Supp. 3d 294 (D.D.C. 2021) .......... 5

*Pinnacle Armor, Inc. v. United States*,
No. 1:07-CV-01655-LJO, 2013 WL 2244393 (E.D. Cal. May 21, 2013) .......... 11

*San Diego Univ. for Integrative Stud. v. Westerlund*,
No. 24-CV-01701-AGS-KSC, 2026 WL 181544 (S.D. Cal. Jan. 22, 2026) .................................... 7, 8

*Sara Lee Corp. v. Am. Bakers Ass'n*,
252 F.R.D. 31 (D.D.C. 2008) .................................... 12

*Scotts Valley Band of Pomo Indians v. United States Dep't of Interior*,
No. CV 19-1544 (ABJ), 2020 WL 13604009 (D.D.C. Oct. 15, 2020) .................................... 6, 10

*Stand Up for California! v. United States Dep't of Interior,*
*71 F*. Supp. 3d 109 (D.D.C. 2014) .................................... 14

*Thompson v. U.S. Dep't of Labor*,
885 F.2d 551 (9th Cir. 1989) .................................... 4

*Todd v. Campbell*,
446 F. Supp. 149 (D.D.C. 1978) .................................... 6

*TOMAC v. Norton*,
193 F. Supp. 2d 182 (D.D.C. 2002) .................................... 5

*Tuite v. Henry*,
181 F.R.D. 175 (D.D.C. 1998) .................................... 13

*United States v. Montero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) .................................... 13

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) .................................... 7

*WildEarth Guardians v. Salazar,*
670 F. Supp. 2d 1 (D.D.C. 2009) .................................... 7

*Zal v. Steppe,*
968 F.2d 924 (9th Cir. 1992) .................................... 13

**Statutes**

5 U.S.C. § 706 .................................... 4
44 U.S.C. § 3518 .................................... 11

**Other Authorities**

E.O. 14248 .................................... 8

## I. INTRODUCTION

Plaintiffs appear confused about what an administrative record is. The problem likely stems from Plaintiffs' confusion about what agency actions they are trying to challenge. Plaintiffs brought this lawsuit seeking to enjoin a recent alleged surge in certain Homeland Security Investigations (HSI) investigations and the sharing of data from U.S. Citizenship and Immigration Service (USCIS) upon which those investigations were allegedly based. In many instances, Plaintiffs made up their own names for these supposed "policies"; names which do not appear in the government's records. Plaintiffs' creative license has muddied the waters to confuse this Court and improperly demand emergency relief.

Nevertheless, the government has worked hard to piece together what Plaintiffs are attempting to challenge and identify the actual, specific alleged agency actions at issue. The government located HSI decisions in March of this year to coordinate with USCIS, and in August to surge resources to investigate potential alien voting activity. The government included the documentation of those decisions, and the only other documents it has confirmed were considered by the agency decisionmakers, in the AR for this matter.

Plaintiffs' arguments to expand the AR fail. An AR is not supposed to include pre-existing agency policies or legal authorities that were not being modified by the action at issue. It is not supposed to include post-decision communications or implementation materials. And it is not supposed to include "every scrap of paper" that the agency prepared while developing the action, nor all of the underlying data in the agency's possession at the time of the decision.

Instead, the AR is supposed to reflect the basis for the agency decision being challenged. That is what the AR does here—it explains the rationale behind the two challenged agency actions, namely, that they were prompted by Executive Orders prioritizing investigations into unlawful alien voting. The government believes that the AR in this matter adequately explains the agency's decision, such that the Court has what it needs to issue a decision on Plaintiffs' motion for a preliminary injunction.

To be clear, the government recognizes its obligation to prepare a complete AR. It has been meeting and conferring with Plaintiffs, and its follow-up searches in response to those discussions remain ongoing. Even apart from those negotiations, the government will supplement the AR if it learns of an additional document which was considered by the decisionmakers for the alleged agency actions at issue.

The AR prepared by the government in this matter is complete. There is no need for judicial intervention, especially in light of the parties' negotiations and the government's commitment to supplementation as appropriate. The Court should deny Plaintiffs' discovery motion.

## II. BACKGROUND

Plaintiffs brought this action to challenge what they described as a set of "Policies" at USCIS and HSI[1] related to using multiple sources of data to generate leads about potential alien voters and then investigate some subset of those leads. *See generally* Compl. Before serving the government with their Complaint, Plaintiffs filed a motion for a preliminary injunction (PI), motion for expedited production of the administrative record and discovery, and motion to shorten time on the briefing. *See* Dkt. 10, 11, 12. The government filed a response to the motion to shorten time one day after receiving it. *See* Dkt. 27.

The Court held a status conference the next day. *See* Dkt. 37. At that hearing, the Court gave Plaintiffs a choice: brief the PI for a decision by October 5, or pursue some set of early discovery, which would necessitate a later hearing and decision on the PI. Plaintiffs chose the former, and the Court ordered the government to file its opposition to the PI motion and produce the administrative record four days later, on September 28. *See id.* The government did so. *See* Dkt. 46, 47.

The AR produced by the government was concise and complete. It consisted of nine pages of internal, nonpublic agency communications related to the alleged actions Plaintiffs appear to identify as being challenged here, as well as the two executive orders that informed those agency actions. The legal justifications for this brevity are discussed further below, but they primarily relate to the fact that Plaintiffs do not challenge traditional agency actions under the APA; rather, they challenge certain aspects of an ongoing law enforcement effort that largely draws from and prioritizes existing agency practices and resources. The government worked diligently in the four days it had to identify the specific agency actions Plaintiffs challenged, locate documents memorializing those actions and that were considered by the relevant decisionmakers, and included the results in the AR. Because of the nature of the law

---

[1] Although Plaintiffs generally refer to polices at both USCIS and HSI, documents Plaintiffs specifically identify in their request for an expedited administrative record—the "Surge Initiative" and the "HSI-USCIS Coordination Memo"—appear, at least based on Defendants' current searches, to have originated with ICE, not USCIS. Plaintiffs have not identified any discrete policy at USCIS and Defendants have not produced any record materials from USCIS in the current administrative record.

enforcement actions being challenged, the government also filed two declarations that explained the relevant processes in detail. *See* Dkt. 46-1 & 46-2.

After receiving the AR, Plaintiffs quickly filed a motion to shorten time (which the government opposed), and thereafter a motion to "complete" the AR or "supplement" it with discovery. *See* Dkt. 53. The Court held another status conference the next day, and ordered the parties to meet and confer and propose a schedule for any remaining disputes. *See* Dkt. 57.

The parties did meet and confer, and were able to narrow the disputes somewhat. *See* Dkt. 61. Plaintiffs acknowledged that the government has separately produced what Plaintiffs called the "HSI Targets Memo," although the government has explained (as is apparent from the document itself) that the memo was not directed to HSI, but rather to another entity that is not at issue in this litigation. The government has also located an additional document related to the HSI "Surge Initiative," and the government will supplement the AR to include this document. To the extent Plaintiffs are now attempting to improperly reframe and expand their claims, the government is reviewing its files out of an abundance of caution to ensure compliance with this newly asserted framework, and will supplement the administrative record with any additional documents that properly belong in the AR if any are located.

At the same time, Plaintiffs agreed that, in the interest of promptly resolving this dispute, "Defendants need not provide the documents described by section 2(k) in advance of the Court's resolution of the PI Motion." Dkt 61 at 2. That section refers to Plaintiffs' request for certain TECS records, as described further on page 8 of their discovery motion, Dkt. 53.

In addition to the agreements memorialized in Plaintiffs' statement, Plaintiffs have also informed Defendants that the dispute is over whether Defendants will provide documents sufficient to show the requested categories, and not for all documents.[2]

[2] While Defendants appreciate Plaintiffs' efforts to focus the inquiry and walk back their prior "All"-documents requests, Plaintiffs' assertion that the government must provide documents "sufficient to show" specific categories of information fundamentally misunderstands the nature of administrative review. The purpose of an AR is to reflect the historical evidence that was before the agency head at the time of the decision—not to satisfy a plaintiff's post-hoc evidentiary checklist. By demanding that the government compile a record "sufficient to show" their preferred categories, Plaintiffs are improperly attempting to import civil discovery standards into an APA proceeding and force a re-investigation of files that were never part of the decision-making track.

## III. ARGUMENT

### A. Plaintiffs' Motion To Complete the Administrative Record Should Be Denied

In reviewing challenges to agency action under the APA, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. Courts have interpreted this APA provision to require judicial review of agency action "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

The Administrative Record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *see also Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1048 (2025). "In reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019). Barring "clear evidence to the contrary," courts "presume that an agency properly designated the Administrative Record." *Blue Mountains*, 99 F.4th at 445 (quotations omitted).[3]

In order to expedite resolution of this matter, and consistent with the Court's instruction at the September 30, 2026 hearing that the parties work cooperatively to resolve administrative-record issues, Defendants have met and conferred with Plaintiffs and have provided documents requested by Plaintiffs that fall outside the administrative record.[4] Dkt. 61, 62; *see also* § B.2, *infra*. Additionally, Defendants are undertaking an internal review to ensure that no documents are missing from the administrative record.

Defendants' preparation of the administrative record should end the matter. "[A]n agency's statement of what is in the record is subject to a presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). Thus, courts must "presume that an 'agency properly designated the

---

[3] As explained in Defendants' brief in opposition to Plaintiffs' motion for an administrative stay and a preliminary injunction, Defendants do not believe that Plaintiffs are challenging a discrete, final agency action. *See* ECF No. 46 at 13–15. However, pursuant to the Court's order that Defendants provide an administrative record, Defendants provided an administrative record with all non-privileged decisionmaking materials the agency could locate that appeared relevant to Plaintiffs' claims. *See* Dkt. No. 37. Defendants continue to preserve all threshold arguments.

[4] Defendants expressly reserve the right to argue that these extra-record documents are not properly considered at this stage of proceedings.

Administrative Record absent clear evidence to the contrary.'" *Id.* (cleaned up).

Nevertheless, Plaintiffs seek to add extra-record materials that the agency did not rely on in its decisionmaking process. *See* Dkt. No. 53. Such a request "runs counter to the principle that judicial review of an administrative action is just that—a review of the administrative action the agency took based on what was before it at the time it acted"—and courts are "leery of requests to consider extra-record evidence in APA cases." *Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*, 573 F. Supp. 3d 294, 307 (D.D.C. 2021) (emphasis in original) (quoting *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, No. 20-CV-103, 2020 WL 5642287, at *8 (D.D.C. Sept. 22, 2020)). To prevail on their request, Plaintiffs must satisfy a "heavy burden" of demonstrating that additional materials are necessary for meaningful judicial review of the agency's decision. *Blue Mountains*, 99 F.4th at 446.

Plaintiffs fail to meet their "heavy burden" to show that such additional materials are necessary for judicial review. *See id.*; *see also* Dkt. 52 (relaying Defendants' position that "[t]he government believes the Court has what it needs to decide the PI motion."). Plaintiffs' remaining requests to complete or supplement the AR should be denied because they request documents that would not have been considered by a decisionmaker to the challenged actions. The administrative record here is sufficiently detailed to permit judicial review of Plaintiffs' APA claims, because it includes the documents relied on by the agencies in support of the challenged decisions to investigate alien voting. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989) (explaining that an administrative record "allow[s] for meaningful judicial review" if it "delineates the path by which [the agency] reached its decision").

**1. Documents not considered by decisionmakers are not part of the AR.**

"[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013). Plaintiffs have not shown that supplementation of the record to include documents that were not considered by decisionmakers is warranted.

The administrative record does not include "every scrap of paper that could or might have been created." *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd sub. nom. TOMAC, Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852 (D.C. Cir. 2006). As courts have repeatedly

recognized, "[a]gency staff across the federal government, as a matter of course, generate a considerable amount of work product every day," but this does not render every last piece of such work product "necessary 'background information [required by the court] in order to determine whether the agency considered all of the relevant factors[.]'" *FDIC v. Bank of Am., N.A.*, No. CV 17-00036 EGS/DAR, 2020 WL 2463934, at *5–6 (D.D.C. Jan. 27, 2020) (quoting *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015)). Moreover, to "supplement the record with such information 'would render judicial review meaningless' by flooding courts with [extraneous] information[.]" *FDIC*, 2020 WL 2463934 at *6 (citations omitted).

**2. Documents reflecting pre-existing agency practices are not part of the AR.**

Nor are Plaintiffs correct in contending that pre-existing agency policies should be included in the record. "[D]epartmental regulations, policies, and procedures are not generally made part of the administrative record." *Scotts Valley Band of Pomo Indians v. United States Dep't of Interior*, No. CV 19-1544 (ABJ), 2020 WL 13604009, at *5 (D.D.C. Oct. 15, 2020).

Moreover, to the extent that Plaintiffs seek underlying data informing DHS's investigative practices, this request is improper. Courts generally reject similar attempts to add data underlying the existing data in the administrative record. *See, e.g., Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 370–72 (D.D.C. 2007) (holding that the administrative record was complete even though the record did not include "raw data, such as raw computer data or individual logbook reports" sought by the plaintiff). "Generally, 'the Court does not need to examine the raw data in order to determine whether or not the [agency's] decision was arbitrary and capricious or otherwise not in accordance with law,' . . . and 'requiring an agency to produce source data upon source data so that its analysis can be replicated in minute detail would appear, in most instances, to exceed the bounds of arbitrary and capricious review.'" *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 25 (D.D.C. 2013) (quoting *Todd v. Campbell*, 446 F. Supp. 149, 152 (D.D.C. 1978); *see James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1095–96 (D.C. Cir. 1996) (finding that in reviewing orders declaring banks insolvent, the district court had no need to review all the source materials seen by bank examiners).

Nor must an administrative record for one proceeding include material collected in earlier, related proceedings involving the same or similar subjects. *See, e.g., City of Dania Beach v. FAA*, 628 F.3d 581,

590–91 (D.C. Cir. 2010) (holding that the administrative record did not need to include materials compiled by the agency in connection with earlier proceedings); *WildEarth Guardians v. Salazar,* 670 F. Supp. 2d 1, 6 (D.D.C. 2009) (holding that the Secretary's having mentioned a 1979 petition in connection with proceedings on a later petition did not make the contents of the 1979 petition part of the administrative record).

**3. Post-decision documents are not part of the AR.**

Plaintiffs also seek a number of post-decisional documents. But it is settled law that "[a]n administrative record need not include documents that became available after the agency made its decision ('post-decisional' documents)." *San Diego Univ. for Integrative Stud. v. Westerlund*, No. 24-CV-01701-AGS-KSC, 2026 WL 181544, at *4 (S.D. Cal. Jan. 22, 2026) (citing *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 555 (1978)). To hold otherwise would frustrate the principle that "[i]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce*, 588 U.S. at 780.

**B. Plaintiffs' Additional Requested Documents Do Not Belong In the AR.**

**1. Documents "establishing the [so-called] Voter Eligibility Matching Policy"**

After conducting a diligent review in the limited time available to them, Defendants have not located a "Voter Eligibility Matching Policy." To paraphrase the Supreme Court: "The term '[Voter Eligibility Matching Policy]' (which as far as we know is not derived from any authoritative text) does not refer to a single [USCIS] order or regulation, or even to a completed universe of particular [USCIS] orders and regulations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990). "It is simply the name by which [Plaintiffs] have occasionally referred to the continuing (and thus constantly changing) operations of the [USCIS] in reviewing [various data sources that may reflect evidence of alien voting activity]." *Id.* "It is no more an identifiable 'agency action'—much less a 'final agency action'—than a 'weapons procurement program' of the Department of Defense or a 'drug interdiction program' of the Drug Enforcement Administration." *Id.*

This matters for present purposes, because the contents of the AR are tied directly to the specific "final agency action" that is subject to review. *See, e.g.*, *Friends Of The Earth v. U.S. Dep't of Interior*,

236 F.R.D. 39, 42 (D.D.C. 2006). When Plaintiffs do not challenge an identifiable "final agency action," but rather an ongoing program consisting of potentially thousands of enforcement decisions, as Plaintiffs are attempting to do here, the agency cannot reasonably discern—much less certify—what must be included in the AR.

To be sure, the government recognizes here that, as the USCIS Declaration makes clear, following the promulgation of E.O. 14248 on March 25, 2025, "FDNS implemented efforts to review aliens who potentially registered or voted unlawfully and naturalized U.S. citizens that potentially registered or voted in a federal election prior to naturalization." Dkt. 46-1 ¶ 9. But "implementing efforts" is not, by itself, final agency action subject to review under the APA. *See* Dkt. 46 at 13–16 (citing cases).

Plaintiffs simply assume, without providing any concrete evidence, that there is a document containing a "protocol guiding USCIS's identification and review of targets." Dkt. 53 at 6. But the government has conducted a diligent search for such a document in the short time it has had available to it, and it has not located any such document at this time. The government understands that some USCIS employees may have communicated informally about these efforts, but such informal communications *after* the efforts were initiated in the spring of 2025 would not properly be part of any administrative record for that action. *See, e.g.*, *Blue Mountains*, 99 F.4th at 446; *San Diego Univ.*, 2026 WL 181544, at *4. The same is true for the training presentation and similar documents or communications referenced in the Whistleblower complaint; such records postdate the agency's initiation of these efforts, and therefore cannot be part of the AR for them. *See id.* Nor are such "training materials" final agency action in their own right. *See, e.g.*, *Hosp. Bus. Servs., Inc. v. Jaddou*, No. CV 19-0198 (EGS), 2021 WL 4262653, at *6 (D.D.C. Sept. 20, 2021) ("USCIS responds—and the Court agrees—that the training materials are not final agency action subject to judicial review.").

Plaintiffs also request "documents reflecting the use of SAVE as part of the [so-called] Voter Eligibility Matching Policy." Dkt. 53 at 6. But as the USCIS Declaration makes clear, SAVE referrals constituted merely a "portion of the information reviewed by FDNS in connection with potential unlawful voter registration or voting." Dkt. 46-1 ¶ 14. "The substantial majority of the information FDNS reviewed came from sources other than SAVE, including information voluntarily provided by state and local jurisdictions, publicly available information, and other lawfully available data." *Id.* As the

government noted before, the Supreme Court recently held that, contrary to that district court order, DHS's modifications to the SAVE system were likely not arbitrary and capricious. *DHS v. League of Women Voters*, No. 26A308, 2026 WL 2879700, 609 U.S. __ (Sept. 25, 2026). In any event, SAVE was at most a tangential aspect of FDNS's efforts to identify alien voting activity; it is not the final agency action being challenged here, and documents reflecting its use do not belong in the AR.[5]

Finally, the same is true for documents reflecting what one unidentified USCIS employee allegedly referred to as "supplemental magic." Dkt. 53 at 6; *see also* Compl. Ex. 1 at 31. Plaintiffs appear to be describing one potential change in USCIS's ongoing efforts to identify alien voters that started in the spring of 2025. That is not a final agency action, and records about it do not belong in the AR.

**2. Documents "establishing policies for protecting U.S. citizens"**

In the second bucket, Plaintiffs seek various documents related to protecting U.S. citizens. *See* Dkt. 53 at 6–7.

First, the USCIS Declaration described certain "safeguards intended to reduce the risk of an erroneous referral." Dkt. 46-1 ¶ 17. "Such safeguards include checking available databases using all available information to match the identity and confirm the citizenship status of all individuals referred, to the extent possible, prior to sending any referrals to HSI for further investigation." *Id.* ¶ 18. "This is not a haphazard process but rather a rigorous analysis of available biographic data, to include but not limited to key identifiers such as first name, last name, date of birth, addresses, and other biographic information. Throughout its analysis FDNS seeks to exclude any United States Citizens from further review." *Id.* ¶ 10. Similarly, the HSI Declaration described a "layered vetting process" that "includes multiple stages of data review and validation involving USCIS records and additional DHS data sources before a matter is referred for HSI investigative consideration." Dkt. 46-2 ¶ 12.

As has been the case throughout this litigation, Plaintiffs assume that these processes are

---

[5] In *League of Women Voters*, the district court found that "establishing the SAVE modified system of records, as it is described in the 2025 SORNs, is a final agency action," including because it manifested a "policy of disclosing confidential information without notice" when DHS would share information with states. 835 F. Supp. 3d 79, 118 (D.D.C. 2026). Here, by contrast, Plaintiffs do not challenge formal modifications to systems of records resulting in the disclosure of confidential information outside the federal government. Rather, they challenge an ongoing internal investigative effort that started more than a year ago.

memorialized in one or more documents, but that does not appear to be the case here. The government has conducted a diligent search for documents memorializing any "policy" regarding these issues, and has not located such a document. *See* Dkt. 61 at 2. The government expects that informal internal USCIS employee communications may discuss these processes, but the government presently has no reason to conclude that any such communications were considered by any relevant agency decisionmakers before any relevant agency actions were taken here. "Nor do the views of a single Service employee necessarily reflect those of the agency or its ultimate decision-maker." *Blue Mountains*, 99 F.4th at 446. It would also be immensely burdensome to review individual emails to try to discern their descriptions of the relevant processes, and further attempt to determine the extent to which those descriptions were considered by agency decisionmakers, all in the limited time Plaintiffs have requested for the Court to make its decision.

Plaintiffs also request the "'DHS and ICE policies and investigative standards' governing investigations of United States citizen voters." Dkt. 53 at 7. Again, such documents are not generally made part of an administrative record. *See Scotts Valley Band of Pomo Indians*, 2020 WL 13604009, at *5. In any event, the government has not found any specific policies related to investigations of U.S. citizen voters that exist or were considered, directly or indirectly, when issuing the March 13, 2026 email and August 31, 2026, bulletin. Rather, the HSI Declarant was referring to the generally applicable policies and standards that apply to any HSI criminal investigation. The government has informed Plaintiffs, in good faith, that a sampling of those documents are already publicly available in the FOIA ICE Library. *See* https://www.ice.gov/foia/library. For example, filtering on that website by "Policies, Procedures, and Manuals," and searching for the term "HSI" returns a range of policies that have already been publicly released governing HSI investigations. Again, these materials do not belong in the AR, but Plaintiffs have access to them anyway, and the government has pointed to them to clarify the kinds of documents that the HSI Declarant was referring to when stating that interviews or field activity are conducted in accordance with "DHS and ICE policy, and investigative standards." Dkt. 53 at 7.

Finally, Plaintiffs request "documents reflecting the 'new model for generating leads for HSI's unlawful voting investigations.'" Dkt. 53 at 7 (quoting HSI Decl. ¶ 19). As the government has informed Plaintiffs, the government is actively investigating whether any documentation reflects the "new model"

referred to in the HSI Declaration. If the government locates such documentation and determines it qualifies for inclusion in the AR under the legal principles discussed above, the government will supplement the AR to add it. At this point, the government is not aware of any such documentation.

**3. Privacy analyses**

Plaintiffs contend that, when the government "launches new projects that require the collection and storage of personally identifiable information about individuals," it must undertake certain privacy analyses. Dkt. 53 at 7–8. But it does not appear that the mere use of existing data systems, even in new ways, would require such analyses—especially for the criminal investigations at issue here. *See, e.g.*, 44 U.S.C. § 3518(c)(1)(A). And even if they were required, Plaintiffs' claims here are not based on any such analyses. *See* Compl. ¶¶ 258–325. Plaintiffs' claims are about potential enforcement actions based on allegedly unreliable information, not whether the government complied with the Privacy Act. *See id.* By contrast, in *League of Women Voters*, the plaintiffs specifically brought Privacy Act claims. *See* 835 F. Supp. 3d at 106. In short, Plaintiffs fail to show why any such analyses should be included in the AR.[6]

**C. The Court Should Deny Plaintiffs' Request For Discovery**

"Generally, discovery is not permitted in Administrative Procedure Act cases because the court's review of the agency decision is limited to the administrative record." *Pinnacle Armor, Inc. v. United States*, No. 1:07-CV-01655-LJO, 2013 WL 2244393, at *5 (E.D. Cal. May 21, 2013) (citing *Common Sense Salmon Recovery v. Evans,* 217 F. Supp. 2d 17, 20 (D.D.C. 2002); *Friends of the Clearwater v. Dombeck,* 222 F.3d 552, 560 (9th Cir. 2000)). Thus, discovery should not be allowed in this case at all.

Nevertheless, Plaintiffs contend that "expedited discovery" in addition to record supplementation is necessary because the administrative record "fails to include key information," namely (1) "data sources and methodology" to generate investigation lists, (2) "the methodology used to match targets," and (3) information on internal safeguards. Dkt. 53 at 9. As stated above, such underlying data is not generally included in administrative records. *See, e.g.*, *Dist. Hosp. Partners*, 971 F. Supp. 2d at 25.

[6] Plaintiffs have asserted that it is their understanding that "Defendants do not believe responsive documents exist" for this request. Dkt. 61 at 2. Defendants have not taken a position on whether any such documents exist for any of the particular systems of record or other databases relevant here. Rather, it is the government's position that, even if they existed, such documents would not belong in the AR for the agency actions being challenged here.

At bottom, Plaintiffs seek such discovery because they want to argue that the agencies' internal data practices, methodologies, and safeguards were insufficient. But courts have found that the desire to bolster APA merits arguments does not suffice to show the highly unusual circumstances warranting a time- and resource-intensive process to provide expedited discovery. *See, e.g.*, *Conservation Force v. Salazar*, No. 1:10-CV-1262 BJR, 2012 WL 11947683, at *7 (D.D.C. Feb. 6, 2012) ("If Plaintiffs believe that the administrative record fails to substantiate the agency's decision . . . , they need to raise the issue in a motion on the merits, not a discovery motion."); *see also Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 44 (D.D.C. 2017) (stating that "plaintiffs basically make a merits argument in a discovery motion[]" by arguing that the agency should have considered additional factors in reaching its decision); *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 35–36 (D.D.C. 2008) ("In fact, plaintiff's approach to 'discovery' in this APA case is fundamentally flawed. As plaintiff would have it, deficiencies in the [agency's] reasoning . . . justify discovery . . . . [But even if true, such deficiencies do not] have anything to do with the fundamental question of whether [review] is to be limited to the administrative record that has been filed and on which the [agency's] determination will rise or fall.").

Plaintiffs essentially ask the Court to order discovery based on arguments about the administrative record's alleged lack of support for DHS's actions. The issue of what information DHS *should have* considered may ultimately bear on whether the agency action at issue was arbitrary and capricious, but that is a merits argument that is wholly irrelevant to what the agency actually *did* consider in making the decisions that Plaintiffs challenge here. Thus, Plaintiffs have not shown the administrative record produced by DHS reflects "such [a] failure to explain administrative action as to frustrate effective judicial review[.]" *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) (brackets and citations omitted).

Moreover, discovery is entirely premature at this case's early stage (and entirely unwarranted given that this is a case challenging agency action). Defendants' brief in opposition to Plaintiffs' motion for a preliminary injunction raises a number of threshold arguments that warrant denial of the motion, including lack of standing, lack of final agency action, that investigatory decisions are generally committed to agency discretion by law, and that Plaintiffs lack non-APA ultra vires causes of action. *See* Dkt. No. 46 at 6–21. As such, Defendants raise serious threshold deficiencies that would also be appropriate for a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.

Justice Jackson, writing for a unanimous Supreme Court, recently emphasized that "[o]ur well-established federal pleading standards are not up for debate in this case. In order *to proceed to discovery,* a plaintiff must 'state a claim to relief that is plausible on its face.'" *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While *Hikma* was not about a discovery dispute, courts in the Ninth Circuit "do not treat considered dicta from the Supreme Court lightly." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000). Rather, "Supreme Court dicta 'ha[s] a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold.'" *Id.* (quoting *Zal v. Steppe,* 968 F.2d 924, 935 (9th Cir. 1992)). Here, the Supreme Court's opinion is plain: discovery prior to resolution of threshold legal issues including jurisdictional issues, if permitted at all, should be the exception and not the norm. Thus, Plaintiffs' discovery requests should be denied.

**D. Defendants' Redactions Are Proper**

Finally, Plaintiffs argue in passing in a single sentence, without citation to any legal authority, that "the Court should order Defendants to cure their unjustified redactions of the administrative record by producing as part of the administrative record unredacted copies of the March 13, 2026 email and August 31, 2026, bulletin, or detailed explanations of why each redaction is justified."

The redactions in the AR were made either on the basis of the law enforcement privilege or because it reflects the PII of federal employees or similarly sensitive and confidential identifying information. "The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998). "The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations." *Id.* at 176–77. Plaintiffs fail to show why those redactions should be lifted, or why any further justification should be required.

Indeed, because privileged documents are not part of an administrative record, an agency has no legal obligation to account for those materials in a privilege log. Courts in a variety of circuits have rejected efforts by plaintiffs to require a log specifically identifying privileged materials withheld from the

administrative record. *See, e.g., Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.") (internal quotations omitted); *California v. U.S. Dep't of Labor*, No. 2:13-CV-02069-KJM-DAD, 2014 WL 1665290, at *13–14 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log."); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *8–9 (N.D. Ill. Aug. 23, 2013) ("[R]equiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA."); *see also Stand Up for California! v. United States Dep't of Interior*, 71 F. Supp. 3d 109, 122 (D.D.C. 2014) (collecting cases).

The government released the portions of the documents in the AR that it determined were not protected by the law enforcement privilege and would not disclose sensitive PII. Nothing more is required here.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Plaintiffs' motion to complete or supplement the Administrative Record.

Dated: October 2, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney

Attorneys for Defendants