CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
KENNETH BRAKEBILL (CABN 196696)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748
kelsey.helland@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>Defendants. | Case No. 4:26-cv-10680-AMO<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING ADMINISTRATIVE RECORD**<br><br>PI Hearing: October 19, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br><br>The Honorable Araceli Martínez-Olguín |

Following the Court's Order (Dkt. 67), the government undertook a search to specifically locate "documents reflecting the 'safeguards intended to reduce the risk' . . . of an erroneous referral" from the Fraud Detection and National Security Directorate ("FDNS") to Homeland Security Investigations ("HSI"). *Id.* at 3. The documents included in the Supplemental AR ("SAR") served today reflect the safeguards described by the USCIS Declarant.[1] The SAR further undermines Plaintiffs' claims in this case, and underscores why a preliminary injunction is not warranted here, for two key reasons.

First and foremost, the safeguards reflected in the SAR defeat Plaintiffs' claims that any agency actions being challenged in this lawsuit were arbitrary and capricious. The SAR reflects that FDNS officers were repeatedly instructed to check a variety of sources for whether individuals subject to investigation were U.S. citizens at the time of the potential voting activity. These sources include USCIS naturalization records, passport records, and travel records. FDNS officers were also specifically instructed to focus on the relative timeline of any voting activity and any naturalization events, because while voting *after* becoming a naturalized citizen would be lawful, registering to vote or voting *before* becoming a citizen could reflect a violation of federal law. Finally, FDNS officers were explicitly instructed to generally err on the side of not referring individuals who appeared to be U.S. citizens for further investigation. Rather, FDNS officers were to simply document why they believed the individual was a citizen, and no referral would be created.

Plaintiffs' core claim in this rushed litigation has been that DHS's use of certain sources of data to investigate potential unlawful voting was arbitrary and capricious because it might result in U.S. citizens being targeted for investigation. As the government previously explained, FDNS recognized the possibility that there were gaps in the data sources available to it, but nevertheless determined that, because of the presence of certain safeguards, it was preferable to use those data sources in order to generate investigative leads, rather than cease investigating such activity altogether. *See* Dkt. 46 at 19-21. The SAR only bolsters that reasonable conclusion. Again, FDNS officers were told to cross-check

[1] The government has conditionally designated the SAR as confidential pending entry of a Protective Order in this matter, which the parties have been negotiating. For that reason, the government is not presently filing the SAR on the public docket. The government is exploring with Plaintiffs options to present the SAR to the Court in advance of the October 19 PI hearing, including moving or stipulating to file the SAR under seal for purposes of that hearing.

multiple sources to determine citizenship and decline further investigatory action when the subject individual appeared to be a U.S. citizen. Referring those leads which did not appear to be U.S. citizens to another agency for further investigation was not arbitrary and capricious agency action.

Second, the government's search for records to include in the SAR, and the resulting documents that were located, underscore that Plaintiffs are not challenging final agency action here. *See* Dkt. 46 at 13-16. Again, Plaintiffs made up the term "Voter Eligibility Matching Policy" to describe USCIS's activities to share potential unlawful voter leads with HSI. *See* Dkt. 10 at 6. But, after undertaking a diligent search, Defendants have located no such "policy," much less any comparable "circumscribed [and] discrete" agency action here. *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 62 (2004). Indeed, to the extent Plaintiffs have otherwise tied their claims to identifiable agency actions, the government has endeavored to prepare administrative records for those actions (while maintaining its defenses that such actions are not reviewable under the APA). Thus, Defendants previously provided administrative records for two of the three so-called "policy documents" identified in Plaintiffs' motion for expedited production of the administrative record and expedited discovery. *Compare* Dkt. No. 11 at 5, *with* Dkt. 50-1 & 50-2.[2]

Defendants have also provided the SAR today, in compliance with the Court's order to produce documents reflecting the "safeguards" referenced by the USCIS Declarant—but these documents only reveal the absence of any cognizable "final agency action" here. As previously explained, FDNS began implementing efforts to identify potential unlawful alien voting following the promulgation of E.O. 14248 on March 25, 2025. *See* Dkt. 66 at 8 (citing Dkt. 46-1 ¶ 9). The documents the government was able to locate to include in the SAR—an email from November 2025, a set of FAQs from August 2026, and another email from September 2026—reflect the reality that Plaintiffs do not challenge a single, concrete agency decision. Rather, Plaintiffs are improperly challenging the general operations of USCIS and HSI. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990); *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 808 (9th Cir. 2013).

[2] Plaintiffs do not dispute that the third document—the so-called "HSI Targets Memo"—was not directed to HSI, but rather to another entity that is not at issue in this litigation. *See* Dkt. 61 at 2; *see also* Dkt. 66 at 3.

For these reasons, in addition to those previously set forth in the government's opposition to Plaintiffs' motion for a preliminary injunction (Dkt. 46), the government respectfully requests that the Court deny Plaintiffs' motion.

Date: October 13, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney

Attorneys for Defendants