CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
KENNETH BRAKEBILL (CABN 196696)
Chief, Civil Division
KELSEY HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California, 94102-3495
Telephone: (415) 436-6488
Facsimile: (415) 436-6748
Kelsey.Helland@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 4:26-CV-10680-AMO<br><br>**DECLARATION OF JAMES C. HARRIS**<br><br>HONORABLE JUDGE ARACELI MARTINEZ-OLGUIN |

# DECLARATION OF JAMES C. HARRIS

In accordance with the provisions of 28 U.S.C. § 1746, I, James C. Harris, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

1. I am employed by the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) as the Assistant Director of Countering Transnational Organized Crime. I have held this position since January 2025.
2. I began my career in law enforcement as a Special Agent in 2003 with the U.S. Customs Service in Seattle, Washington, and became a member of the Senior Executive Service in 2022. I hold an undergraduate degree in criminal justice from the University of Cincinnati, a Master of Business Administration from George Mason University, a Master of Public Administration from the University of Pennsylvania, and an Executive Certificate in Public Leadership from the Harvard Kennedy School.
3. I have held several leadership positions within DHS. I have served as the Chief of Staff to the ICE Deputy Director, and subsequently as the Deputy Chief of Staff to the ICE Director. I also served as the Division Chief/Deputy Director of the Export Enforcement Coordination Center. I also served as an HSI Assistant Special Agent in Charge (ASAC) of the national security portfolio for the National Capital Region and as an Associate Deputy Assistant Director, specializing in investigative services that included undercover operations, asset forfeiture, forensics, victim assistance, parole, and immigration benefits.
4. As the Assistant Director for Countering Transnational Organized Crime, I am responsible for programmatic oversight of HSI's strategic planning, national policy implementation, and the development and execution of operational initiatives. In collaboration with HSI's Operations, I ensure the implementation of investigative activities and programs in conformance with national priorities, HSI's

strategic goals, and performance measures.

5. As a customs officer, I am empowered with the law enforcement authority set forth at19 U.S.C. § 1589a. Under that authority, HSI Special Agents may, among other authorities, "make an arrest without a warrant for any offense against the United States committed in the officer's presence or for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony." 19 U.S.C. § 1589a(3). That authority is broad, and it includes the authority to investigate the full panoply of crimes in Title 18 of the United States Code, including unlawful voting by aliens in federal elections under 18 U.S.C. § 611.

6. As an HSI Special Agent, I am also an immigration officer empowered with the law enforcement authority set forth at 8 U.S.C. § 1357. With that authority, I am able to investigate both civil and criminal violations involving false claims to citizenship, and I can investigate both civil and criminal denaturalization cases.

7. I am aware of the preliminary injunction issued by the court on October 21, 2026. Dkt. 87. I am providing this declaration in support of the Government's motion to stay the preliminary injunction due to the order's adverse impact on HSI investigations.

8. The preliminary injunction sets forth restrictions on active HSI investigations across nine states: California, Connecticut, Georgia, Missouri, Nevada, New York, Pennsylvania, Washington and Wisconsin. The injunction applies to all "elections-related field operations and field interviews" which would impact HSI investigations into the following federal crimes: 18 U.S.C. § 611 (illegal alien voting) and 18 U.S.C. § 1015(f) (false claim to U.S. citizenship).

9. As set forth in Executive Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, HSI investigates allegations of noncompliance with federal law to include investigating the unlawful voting of non-U.S. citizens.

10. The preliminary injunction places sharp limitations on active investigations by requiring individuals HSI "knows, suspects or should reasonably know" are U.S. citizens to be treated differently in these active investigations than aliens. In implementing this preliminary injunction, HSI agents may be deterred from performing their law enforcement functions and inadvertently hold individuals who HSI could not conclusively verify to be aliens prior to a field interview above lawful questioning and inquiry into the integrity of the voting system.

11. Ordinarily, in criminal voter fraud investigations, any leads generated using a combination of state voter roll information and DHS data holdings are subsequently forwarded to HSI criminal investigators in the field. While these investigators may take any number of investigative steps, nearly all voter fraud investigations result in an in-person interview. This step is integral to such investigations because it ensures that DHS is investigating noncitizen voters. It allows for DHS to foreclose the possibility that the target of the investigation is a U.S. citizen. Without this step, it is very difficult for a criminal investigator to establish probable cause.

12. The Court's order adds confusion and hampers a special agent's ability to act decisively in conducting criminal law enforcement investigations because agents may now fear, given the language of the preliminary injunction, that their actions— designed to remove U.S. citizens from suspicion of a criminal violation— may be in contempt of the court's order.

13. DHS will suffer irreparable harm if the preliminary injunction remains in force. Voter fraud cannot occur without an election. Hampering DHS's ability to interview suspected unlawful voters for fear of inadvertently encountering U.S. citizens will effectively lessen the chances that DHS will be able to identify and arrest an alien who would have voted in a national election on November 3, 2026.

14. The preliminary injunction impacts approximately 1,900 active cases across multiple HSI field offices. To be clear, not all leads received or generated are

actionable, and this is a subset of the leads generated within DHS.

15. The statements made in this Declaration are based on the knowledge acquired by me in the performance of my official duties and in conjunction with the factual and legal research conducted by other investigators and staff at DHS.

Dated: October 27, 2026

/s/ James C. Harris

James C. Harris
Assistant Director
Countering Transnational Organized Crime
Homeland Security Investigations

Executed this 27th day of October, 2026, Washington, D.C.