**PROTECT DEMOCRACY PROJECT**
BEAU C. TREMITIERE, SBN 320074
300 Center Ave, Suite G-251
Superior, CO 80027
GEOFFREY CURFMAN* NY Bar No. 5809199
JESSICA MARSDEN* NY Bar No. 5316526
82 Nassau St., #601
New York, NY 10038
HAYDEN JOHNSON* DC Bar No. 1671830
ZACHARY WEST* NY Bar No. 5192257
ASHLEY FOX* LA Bar No. 41748
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
Email: beau.tremitiere@protectdemocracy.org

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION,
NATIONAL NURSES UNITED, and VOTO
LATINO FOUNDATION

*Additional Counsel for Plaintiffs in Signature Block*

**Admitted pro hac vice*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVSION

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | Case No. 4:26-cv-10680-AMO<br><br>**PLAINTIFFS' OPPOSITION TO EX PARTE MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL** |

## INTRODUCTION

Plaintiffs (collectively, "CNA/NNU") oppose Defendants' (collectively, "DHS") request for a stay pending appeal under Fed. R. App. P. 8. The District Court already stayed the injunction for two days, and DHS waited five days to file its notice of appeal and nearly a full week after the issuance of the injunction to seek this relief.

## ARGUMENT

In seeking this stay, the federal government makes a remarkable request to the Court: grant emergency intervention to permit armed DHS agents to interrogate and harass U.S. citizens about their voter eligibility through Election Day. This conduct is all that the District Court enjoined.

The District Court issued this relief after holding that DHS's unprecedented election-season operation is unlawfully intimidating those who assist U.S. citizen voters and chilling their protected electoral activity. Preliminary Injunction Order ("Order"), Dkt. 87 at 13. As the largely uncontested factual record makes clear, DHS's unlawful operation employs two steps. First, DHS knowingly uses faulty data and processes to create target lists, which it concedes sweep in U.S. citizens and even specifically target some naturalized citizens. Second, DHS uses those target lists to interrogate people—including U.S. citizens—about their voter eligibility. DHS then amplifies videos and images of its "deployment of armed officers in a militarized action to individuals' homes and communities," causing "an objectively reasonable fear of law enforcement entanglements that intimidates citizens from urging or aiding others in exercising their right to vote." *Id.*; *see also id*. at 1-5. As the District Court concluded, CNA/NNU members—hundreds of thousands of nurses around the country, including naturalized citizens especially fearful of DHS targeting—are likely to succeed on their claims that DHS is violating Section 11(b) of the Voting Rights Act. *Id.* at 11-15.

The District Court's order enjoins only DHS's field operations involving U.S. citizens, through Election Day, and in nine states where CNA/NNU have members and where DHS concedes it has focused its surged operations: California, Connecticut, Georgia, Missouri, Nevada, New York, Pennsylvania, Washington, and Wisconsin. *Id*. at 18.

In weighing whether to issue a stay of that narrow order, the key consideration is how "to minimize harm while an appellate court deliberates," given an assessment of "the relative consequences

of staying the lower court judgment versus allowing it go . . . into effect." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett. J., concurring). DHS cannot credibly argue that a stay—which would permit DHS to interrogate and harass U.S. citizens in the final days of the election—will "minimize harm." *See id*. Further, issuing the stay will disturb, rather than maintain, the longstanding status quo of ensuring eligible U.S. citizen voters may safely participate in elections free from fear that the government will target them. *See, e.g., Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (status quo is the state of affairs prior to the challenged action).

A stay will not minimize harm—rather, it will deprive CNA/NNU of meaningful relief from DHS activity the District Court found likely constitutes unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act. Order at 11-15. As the District Court held, DHS's flawed and intimidating operations harm CNA/NNU's U.S. citizen members by hindering "their effort to engage voter outreach, education, and engagement" and therefore infringing "the Fifteenth Amendment's promise of access to the vote." Order at 15 (quoting *National Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 474, 476 (S.D.N.Y. 2020)). CNA/NNU's irreparable harms can only be meaningfully remedied if DHS's unlawful operations involving U.S. citizens are enjoined now. Voting is already underway in the states covered by the injunction and where CNA/NNU have members and will continue for just eight more days. "[O]nce the election occurs, there can be no do-over and no redress," and "[t]he injury to these voters is real and completely irreparable" if DHS's intimidation campaign continues in the coming days. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

No matter how urgently the Court of Appeals and parties act, full briefing and resolution of DHS's appeal will take a substantial portion of the period remaining until Election Day. Every day that passes without the injunction in effect would expose CNA/NNU's members to unlawful intimidation and inflict the irreparable harms identified in the District Court's decision. Every single violation is particularly harmful at this late hour, when so little time remains before voting ends. A stay at this point would likely deprive CNA/NNU's members of any meaningful relief in this case and "thus risks rendering [the injunction] effectively moot." *See Nat'l Urb. League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020). This Court should not issue a stay that effectively reverses and resolves the case in DHS's favor

before the Court of Appeals weighs the merits of the underlying order.

In contrast, DHS will suffer no irreparable harm if the District Court's modest injunction—which applies only to field operations in nine states, only to operations involving persons DHS "know[s], suspect[s], or should reasonably know or suspect are U.S. citizens," and only until polls close on November 3—is not stayed. Order at 18. DHS's claims of urgency are undermined by its own complacency: this injunction was issued six days ago. Even though the District Court stayed the injunction for two days to afford DHS an opportunity to seek relief from this Court, DHS failed to even notice its appeal before that time ran out—waiting instead an additional four days to file this request. Order at 18. And, as DHS has consistently represented, the field operations are investigating allegations of *past voting* and do not relate to voting in the upcoming election. DHS Brief in Opposition to Motion for Preliminary Injunction ("PI Opp'n"), at 4-6 (Dkt. No. 46). No extreme exigency requires that those operations, particularly involving U.S. citizens, be concluded before the appeal is resolved. *See Doe #1*, 944 F.3d at 1223 ("the absence of a sufficient exigency" favors denying stay). Regardless, the actual occurrence of non-U.S. citizens improperly participating in elections "is exceedingly rare." *United States v. Weber*, 816 F. Supp. 3d 1168, 1186 n.26 (C.D. Cal. 2026).

This is particularly true here, where DHS itself proposed limiting any injunction in precisely this manner. *See* PI Opp'n at 28 ("If the Court were to grant any relief whatsoever, it should be limited to something akin to . . . [an] injunction, such that DHS would, for a limited period of time, be prevented from conducting field operations directed at individuals whom the agency knows or reasonably should know to be U.S. citizens."). DHS's General Counsel also posted on social media that he believes the injunction would not affect "most" of DHS's operations. James Percival (@DHSGenCounsel), X (Oct. 22, 2026, 3:45PM ET), https://x.com/dhsgencounsel/status/2113355974006153349.

Even if this Court issues no stay at all, the District Court's narrowly drawn injunction would lift on its own when polls close on November 3. Order at 18. That would simply bring current practice into alignment with longstanding federal executive policy delaying elections-related operations until after an election concludes. Tremitiere Declaration Ex. 46, at 84 (Dkt. No. 10-7 at 618) (noting decades-long DOJ policies to avoid investigations with "the obvious risk of chilling legitimate voting and campaign activities" during an election).

DHS's inability to show harm, irreparable or otherwise, means that it fails to meet its burden to show "that the circumstances justify an exercise of [this Court's] discretion" to order a stay. *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025). Irreparable harm to CNA/NNU, the public interest, and the merits further confirm that a stay should be denied. *Id.* (applying *Nken* factors to stay request).

## CONCLUSION

The Court should deny the request for a stay.

DATED: October 27, 2026

Respectfully submitted,

By: /s/ Beau C. Tremitiere
BEAU C. TREMITIERE
Counsel
GEOFFREY CURFMAN*
Counsel
HAYDEN JOHNSON*
Counsel
ZACHARY WEST*
Counsel
JESSICA MARSDEN*
Counsel
ASHLEY FOX*
Counsel

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION,
NATIONAL NURSES UNITED, AND
VOTO LATINO FOUNDATION

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
MICHAEL A. KEOUGH
Special Counsel
JOEL F. WACKS
Deputy City Attorney

By: /s/ Michael A. Keough
MICHAEL A. KEOUGH

Special Counsel

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
BILL NGUYEN
Deputy County Counsel

By: *<u>/s/ Bill Nguyen</u>*
BILL NGUYEN
Deputy County Counsel

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

BENJAMIN R. FARLEY*
Counsel
IMANI FRANKLIN*
Counsel

By: *<u>/s/ Benjamin R. Farley</u>*
BENJAMIN R. FARLEY*
Counsel

Attorneys for Plaintiffs
CALIFORNIA NURSES ASSOCIATION,
NATIONAL NURSES UNITED, AND
VOTO LATINO FOUNDATION

**Admitted Pro Hac Vice*

**FILER'S ATTESTATION**

I, Beau Tremitiere, am the ECF user whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

DATED: October 27, 2026

Respectfully submitted,

By: */s/ Beau C. Tremitiere*
BEAU C. TREMITIERE
Counsel