UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA NURSES ASSOCIATION, et al.,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Defendants. | Case No. 26-cv-10680-AMO<br>**ORDER DENYING EX PARTE MOTION TO STAY INJUNCTION PENDING APPEAL**<br>Re: Dkt. No. 90 |

On October 21, 2026, the Court granted Plaintiffs' motion for preliminary injunction and enjoined Defendants from conducting field operations involving U.S. citizens through Election Day in the nine states where Defendants have focused its surge operations. Dkt. No. 87. The Court stayed the injunction until October 23, 2026. On October 27, 2026, Defendants filed an ex parte motion for a stay pending appeal of the preliminary injunction order. Dkt. No. 90. Plaintiffs opposed the stay within hours of Defendants' filing of the motion. Dkt. No. 91. For the following reasons, the Court DENIES Defendants' motion to stay the preliminary injunction pending appeal.

A stay pending appeal is an "extraordinary remedy." *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). Because "[a] stay is an intrusion into the ordinary processes of administration and judicial review," it "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "It is instead an exercise of judicial discretion," the "propriety [of which] is dependent upon the circumstances of the particular case," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* (*quoting Nken*, 556 U.S. at 433-34).

United States District Court
Northern District of California

Courts consider four elements to determine whether a stay pending appeal should be granted:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434. "The first two factors . . . are the most critical." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 937 (9th Cir. 2025).

The Ninth Circuit uses a "sliding scale" approach that balances these factors, such "that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). But "if the petition has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Id.* at 965 (citing *Nken*, 556 U.S. at 433-34 ("In short, a proper showing regarding irreparable harm was, and remains, a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay."). Accordingly, the Court focuses its attention on irreparable harm and, finding Defendants' showing deficient, does not reach the remaining *Nken* elements.

Defendants have not made the requisite showing "that a stay is necessary to avoid likely irreparable harm" while their appeal is pending. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). Defendants first claim that they are experiencing irreparable harm because the Court "effectively seeks to oversee DHS's efforts to determine whether preliminary evidence of noncitizen voting warrants further investigation;" and such intrusion is in violation of the separation of powers and necessarily causes irreparable harm. Dkt. No. 90 at 16. Not so. The injunction requires that Defendants cease to engage in conduct that intimidates persons who would urge or aid others in voting in a way that violates the Voting Rights Act. *See* Dkt. No. 87 at 12-15. Compliance with the law does not constitute a legally cognizable harm. *See, e.g., Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (an agency "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). Defendants fail to establish irreparable harm on this basis.

Defendants next claim that they face irreparable harm because the injunction will have a "chilling effect" on enforcement operations given the threat of contempt for violating the injunction. Dkt. No. 90 at 16. This argument rests primarily on the premise that the injunction vaguely relies on agents' suspicions. *Id.* However, Defendants previously advocated for the scope of the injunction as "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Dkt. No. 46 at 36 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). In this regard, the injunction matches the limitations proposed by Defendants. *Compare* Dkt. No. 46 at 37 ("If the Court were to grant any relief whatsoever, it should be limited to something akin to . . . [an] injunction, such that DHS would, for a limited period of time, be prevented from conducting field operations directed at individuals whom the agency knows or reasonably should know to be U.S. citizens.") *with* Dkt. No. 87 at 18 (enjoining "Conducting elections-related field operations and field interviews . . . that involve or are likely to involve persons whom the Enjoined Parties know, suspect, or should reasonably know or suspect are U.S. citizens"). Moreover, Defendants can hardly claim irreparable harm where they asserted that their preexisting policies and practices already comply with such an injunction. Dkt. No. 46 at 37 ("Indeed, the multiple filters and checks that HSI already has in place before conducting field operations are designed to do exactly that."). Any claimed "chilling effect" to investigators does not represent an irreparable harm warranting a stay.

Defendants additionally claim that they face irreparable harm because the injunction will prevent DHS from identifying and arresting a noncitizen who "would have voted in an election on November 3, 2026." Dkt. No. 90 at 17. This argument contradicts Defendants' own description of the field operations. Defendants consistently represented that the field operations investigate allegations of past voting and do not relate to voting in the upcoming election. Dkt. No. 46 at 13-15. If the investigations target instances of past voting, the injunction poses no irreparable harm by, in effect, briefly delaying Defendants' investigations until after the sensitive period for election activity related to the upcoming election. Importantly, limiting DHS policies that sweep in U.S. citizens for investigation, and result in the intimidation of CNA/NNU from urging or aiding others in exercising their right to vote during the final weeks leading up to the midterm

elections, does not prevent Defendants from exercising their authority to investigate voter fraud by lawful means while the injunction is in effect, or by lawful field operations thereafter. No extreme exigency requires that the operations, particularly involving U.S. citizens, must be concluded before the appeal is resolved or the injunction expires. *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) ("the absence of a sufficient exigency" favors denying stay). Defendants fail to establish irreparable harm on this basis as well.

Lastly, though Defendants claim that a stay is necessary on an urgent basis, their assertions of urgency are undermined by their own complacency. The Court issued the preliminary injunction order on October 21, 2026, and stayed the injunction for two days, allowing Defendants the opportunity to appeal and to seek relief from either this Court or the Ninth Circuit. *See* Dkt. No. 87 at 18. Defendants did not notice their appeal until five days after the Order issued, and the instant motion followed six days after the Order. *See* Dkt. Nos. 89 & 90. Such delay stands in stark contrast with Defendants' demonstrated ability to quickly respond and file papers in this case. *See, e.g.*, Dkt. No. 52 (Defendants' opposition brief filed within hours following motion). This alone cuts against granting a stay. *See Doe #1*, at 1223 ("the absence of a sufficient exigency" favors denying stay).

Defendants' failure to demonstrate irreparable harm during the pendency of the appeal is reason enough to deny its motion. *See Leiva-Perez*, 640 F.3d at 965. Because Defendants have not demonstrated irreparable harm, the Court **DENIES** Defendants' application for a stay pending appeal.

**IT IS SO ORDERED.**

Dated: October 29, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**